[No. 15075-8-I.   Division One.   September 29, 1986.]

Arthur G. Schreifels, et al, *Appellants*, v. Safeco Insurance Company, et al, *Respondents*.

*William A. Stiles, Jr.*, and *Stiles & Stiles, Inc., P.S.*, for appellants.

*David A. Welts* and *Welts & Welts*, for respondent Safeco Insurance Co.

*Ross Radley* and *Houghton, Cluck, Coughlin & Riley*, for respondent Transamerica Insurance Co.

Swanson, J.—Arthur and Thelma Schreifels appeal the trial court's order affirming a court commissioner's denial of their motion to vacate an arbitration award and the judg-

ment confirming that award. The Schreifelses contend that the award of $445,000 in their favor was tainted because one of the arbitrators and his law firm had an ongoing professional relationship with two of the parties to the arbitration.

Appellants Arthur and Thelma Schreifels were seriously injured in an automobile accident with an uninsured motorist in November 1982. The Schreifelses were covered by two insurance policies issued by the respondents Safeco Insurance Company and Transamerica Insurance Company. The Safeco policy, which had a limit of $300,000, covered the Schreifelses' automobile; the Transamerica policy, which had a limit of $500,000, covered the Schreifelses through Factory Homes, Inc., a business owned by the appellants.

Following a dispute over coverage, an arbitration clause in the policies was invoked.[1] Pursuant to the policy, the Schreifelses selected Randolph Petgrave as an arbitrator, Safeco and Transamerica selected William Baker, a member of the Everett law firm of Anderson, Hunter, Dewell, Baker & Collins, P.S., and then Petgrave and Baker selected James Anderson as the third chief arbitrator. All three are attorneys.

Following a hearing on January 30, 31, and February 1, 1984, the arbitration panel awarded the Schreifelses a total of $445,000. Arbitrators Baker and Anderson concurred in the result; Petgrave, the arbitrator appointed by the Schreifelses, dissented. A judgment and an order confirming the arbitration award were entered on February 24, 1984. Following entry of this order, the Schreifelses became aware that Baker and his law firm had in the past and were continuing to represent Safeco and Transamerica in unrelated matters. In addition, Baker's firm was, at the time of

---

[1]The clause governing arbitration provided in pertinent part:

"In this event [of arbitration], each party will select an arbitrator. The two arbitrators will select a third. . . .

". . . Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding."

the arbitration, also defending, on behalf of Transamerica, Factory Homes, Inc., in unrelated litigation. This information was not affirmatively disclosed by Baker.

On April 20, 1984, the Schreifelses moved for an order vacating the arbitration award and vacating the judgment confirming the award. An order denying the Schreifelses' motion, signed by the Skagit County Court Commissioner, was entered on May 21, 1984. By order entered June 21, 1984, the Superior Court affirmed the court commissioner's ruling, finding that the Schreifelses' counsel knew or should have known that Baker and his law firm had represented Transamerica.

The Schreifelses' primary contention is that Baker's failure to disclose his prior and ongoing representation of the respondents constitutes "evident partiality or corruption" as set forth in RCW 7.04.160(2). The Schreifelses urge on appeal that these circumstances, standing alone, mandate vacation of the arbitration award. We disagree.

■ Arbitration in this state is a statutory proceeding; the rights of the parties are controlled by statute. *Northern State Constr. Co. v. Banchero,* 63 Wn.2d 245, 249, 386 P.2d 625 (1963); *see generally* RCW 7.04. RCW 7.04.160 provides that a court shall vacate an arbitration award under the following circumstances:

(1) Where the award was procured by corruption, fraud or other undue means.

(2) Where there was evident partiality or corruption in the arbitrators or any of them.

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made.

. . .

An award *shall not be vacated* upon any of the grounds set forth under subdivisions (1) to (4), inclusive,

*unless the court is satisfied that substantial rights of the parties were prejudiced thereby.*

(Italics ours.) Consequently, to obtain an order vacating an arbitration award, the plaintiff must show both (1) one of the grounds set forth in RCW 7.04.160(1)–(4); and (2) that substantial rights have been prejudiced.

In considering an application to vacate an arbitration award, the function of the trial court is to ascertain whether statutory grounds exist to vacate the award; review is limited to whether violations of the statutory provisions occurred. *See St. Paul Ins. Cos. v. Lusis,* 6 Wn. App. 205, 208, 492 P.2d 575, 56 A.L.R.3d 687 (1971). The burden of showing fraud or other matters sufficient to set aside an arbitration award is on the party seeking vacation. *Keen v. IFG Leasing Co.,* 28 Wn. App. 167, 175, 622 P.2d 861 (1980).

RCW 7.04 does not define "evident partiality," and numerous courts have struggled with this concept:

> "Evident partiality", like obscenity, is an elusive concept: one knows it when one sees it, but it is awfully difficult to define in exact terms. No jurist has yet coined an exacting legal standard for "evident partiality", although many have tried.

*International Bhd. of Elec. Workers, Local 323 v. Coral Elec. Corp.,* 104 F.R.D. 88, 89 (S.D. Fla. 1985). Federal courts have frequently construed 9 U.S.C. § 10(b), a provision of the United States Arbitration Act identical to RCW 7.04.160(2). In *Commonwealth Coatings Corp. v. Continental Cas. Co.,* 393 U.S. 145, 21 L. Ed. 2d 301, 89 S. Ct. 337 (1968), the United States Supreme Court, in a plurality opinion, suggested that arbitrators, like judges, must avoid even the "appearance of bias." 393 U.S. at 150. Subsequent federal decisions, however, have persuasively challenged this statement as an actual holding of the *Commonwealth Coatings* Court. *See, e.g., Morelite Constr. Corp. v. New York City Dist. Coun. Carpenter's Benefit Funds,* 748 F.2d 79, 82 (2d Cir. 1984). In any event, courts have split on the question of whether an arbitration award may be vacated

on the basis of "evident partiality" when there is a showing of only an "appearance of bias." *See, e.g., Morelite Constr.,* at 84 (construing 9 U.S.C. § 10(b) to require more than "appearance of bias" but less than "actual bias," court held "evident partiality" exists "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration"); *International Produce, Inc. v. A/S Rosshavet,* 638 F.2d 548 (2d Cir. 1981); *Tamari v. Bache Halsey Stuart Inc.,* 619 F.2d 1196 (7th Cir. 1980); *see also International Bhd. of Elec. Workers,* at 90 (reasonable person would believe fact that arbitrator who wrote panel decision and whose law firm represents one of parties to arbitration to be strong evidence of bias).

The Schreifelses' reliance on *St. Paul Ins. Cos. v. Lusis, supra,* for the proposition that Baker had a duty to disclose his representation of Transamerica and Safeco is misplaced. In *St. Paul Ins. Cos. v. Lusis, supra,* Division Two of the Court of Appeals concluded that an arbitrator has a duty to disclose a circumstance or relationship

> from which it would probably not be unreasonable to infer presence of bias, absence of impartiality, or existence of interest in the welfare of one of the parties.

*St. Paul Ins. Cos. v. Lusis, supra* at 213. The court, however, was construing not only RCW 7.04.160, but also an American Arbitration Association rule requiring an arbitrator to disclose "any circumstance likely to create a presumption of bias which might disqualify him as an impartial Arbitrator." No such provision is involved in the case before us.

In *Lusis,* the appellant had sought vacation of an arbitration award after the arbitrator failed to disclose that he and one of respondent's counsel were both members of the Board of Governors of the Washington State Trial Lawyers Association (WSTLA), an association that might, the appellant argued, tend to make the arbitrator biased against insurance companies. The court implies, without clearly so stating, that this relationship absent other circumstances, was sufficient to trigger the duty to disclose.

██ However, even if we assume that Baker's relationship with Safeco and Transamerica was one from which it would not be unreasonable to infer the presence of bias and that therefore Baker would normally have a duty to disclose the relationship, our inquiry is not complete. The *Lusis* court determined that the duty to disclose must be considered in conjunction with any public knowledge or notoriety surrounding the circumstances or relationships at issue:

> [I]f there is a substantial degree of notoriety, the test of whether or not the matter should be disclosed by the arbitrator is not whether or not the party subsequently "aggrieved" had actual knowledge of the circumstance or relationship. Rather, the test in such a case is whether or not it would be unreasonable for the arbitrator to assume that such party obviously must have knowledge of the matter.

*Lusis,* at 214.[2]

On the basis of newspaper accounts of the WSTLA board election, WSTLA seminar notices listing the members of the Board of Governors that had been circulated among members of the bar, the appellant insurance company's extensive involvement in litigation, and the fact that a member of appellant's law firm had attended a WSTLA seminar just prior to the notice of appointment sent to the arbitrator, the *Lusis* court determined that it was not unreasonable for the arbitrator to assume that the appellant had had knowledge of the relationship and that vacation of the award was therefore not appropriate.

The facts in the instant case are significantly more sup-

---

[2]In a decision relied upon by the *Lusis* court, the United States Supreme Court vacated an arbitration award after it was discovered that one of the arbitrators had had a prior business relationship with one of the parties. *See Commonwealth Coatings Corp. v. Continental Cas. Co.,* 393 U.S. 145, 21 L. Ed. 2d 301, 89 S. Ct. 337 (1968). The Court vacated the award solely because the arbitrator failed to disclose the relationship; no allegation was made that the arbitrator was in fact biased or that the undisclosed relationship in any way affected the outcome. The federal statute before the Court in *Commonwealth,* however, does not contain a provision similar to the one in RCW 7.04.160 requiring the plaintiff to demonstrate prejudice to substantial rights.

portive of actual knowledge by the Schreifelses and their attorney of Baker's relationship to Safeco and Transamerica than those considered in *Lusis*. The record contains the following circumstances that support the trial court's finding that "the plaintiffs['] attorney knew or should have known that the arbitrator, William Baker's, law firm did represent on unrelated cases and has represented in the past the defendant Transamerica insurance company. . . ."

1. A letter dated May 4, 1983, from a member of Baker's firm to Mr. Schreifels, informing Mr. Schreifels that the firm had been retained by Transamerica to represent Factory Homes, Inc., a corporation owned by the Schreifelses, in litigation entitled Fell v. Factory Homes.

2. A letter dated June 6, 1983, from William Stiles to Baker's firm and containing the summons and complaint in the Fell litigation.

3. Depositions in the Fell case were conducted by members of Baker's firm in the offices of the Schreifelses' counsel, Stiles.

4. William Baker's affidavit states that various members of Baker's firm, including Baker himself, had defended personal injury actions brought by Stiles against Safeco and Transamerica. In particular, Baker mentions an action entitled Jack Leslie v. Transamerica, lasting from 1979 through 1982, in which extensive contact apparently occurred between the Baker firm and the Stiles firm.

Consequently, ample evidence supports the trial court's finding and, under the standard set forth in *Lusis,* it was reasonable for Baker to assume that the Schreifelses and their counsel knew of his relationships. We therefore agree with the trial court that Baker had no duty to disclose.

Even if we assume that Baker's conduct in the instant case rises to the level of "evident partiality" as set forth in RCW 7.04.160, the trial court's decision was still correct. RCW 7.04.160 provides not only that the party seeking vacation must show "evident partiality," however that term is defined, but also that the "evident partiality" resulted in prejudice to "substantial rights" of the parties. No such

showing was made in the instant case.

The Schreifelses' argument for vacation of the award rests solely on the contention that Baker failed to disclose his relationships with Safeco and Transamerica. No allegation is made on appeal that the award was in any way affected by Baker's prior representation of the insurance companies or that the Schreifelses failed to have a full and fair hearing. The only evidence in the record on this matter is to the contrary. In his unchallenged affidavit, Baker states that there was no private contact between himself and James Anderson, the chief arbitrator, and that the two independently reached similar figures for the award. Nor was there any contact between Baker and the insurance companies regarding the merits of the arbitration. Moreover, in the instant case, unlike *Lusis,* three arbitrators were chosen, lessening the consequences of potential bias. Apparently, the only allegation of any undue influence in the record is a claim made in the Schreifelses' affidavit that "[t]he arbitrator appointed by us [Randolph Petgrave] dissented to the award, and has indicated the unfairness and partiality displayed by William Baker and his influence on the arbitrators." However, no affidavit by the Schreifelses' arbitrator was added to the record confirming these allegations, and they have not been repeated on appeal. Consequently, even if Baker breached a statutory duty to disclose, RCW 7.04.160 requires that vacation of the award be based on some showing of prejudice. The Schreifelses' argument that "evident partiality" means only "appearance of bias" and that appearance of bias is sufficient to justify vacation of an arbitration award, if correct, would render that portion of RCW 7.04.160 calling for a showing of prejudice to "substantial rights" superfluous.[3]

---

[3]As one court has observed:

"The most sought–after arbitrators are those who are prominent and experienced members of the specific business community in which the dispute to be arbitrated arose. Since they are chosen precisely because of their involvement in that community, some degree of overlapping representation and interest inevitably results. . . . Under these circumstances, a decision on our part to vacate arbi-

The Schreifelses have raised two issues that are not properly part of this appeal. The first involves an attempt by Safeco to set off $42,000 in Personal Injury Protection payments from its share of the arbitration award; the second pertains to a dispute among the parties as to the applicable policy limits. No error has been assigned in connection with either contention. In addition, it is apparent from the record that there has been no adjudication below of either issue.

These issues, as well as other allegations regarding bad faith and breach of fiduciary duty by the insurance companies in connection with the arbitration proceedings, are part of a separate lawsuit filed by the Schreifelses on April 29, 1984. This suit has been stayed pending resolution of the instant appeal.

Judgment affirmed.

WILLIAMS and GROSSE, JJ., concur.

tration awards whenever a mere appearance of bias can be made out would seriously disrupt the salutary process of settling . . . disputes through arbitration. We are convinced that the goals of the arbitration system would not be served if arbitrators and Article III judges were held to the same high standard. To vacate an arbitration award where nothing more than an appearance of bias is alleged would be 'automatically to disqualify the best informed and most capable potential arbitrators.'" (Citation omitted.) *International Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548, 552 (2d Cir. 1981) (quoting *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 21 L. Ed. 2d 301, 89 S. Ct. 337 (1968) (White, J., concurring)).