[No. 14131-4-III.   Division Three.   December 12, 1995.]

JAYDINE MUNSEY, ET AL., *Appellants*, v. WALLA
WALLA COLLEGE, *Respondent*.

*Kristian E. Hedine* and *Reese, Baffney, Schrag & Hedine, P.S.*, for appellants.

*Andrew L. Kottkamp* and *Carlson, Dremelow & McMahon, P.S.*, for respondent.

SWEENEY, J. — Walla Walla College (College) and a number of former employees and students (Claimants) agreed, in writing, to arbitrate claims of sexual discrimination, sexual harassment, and infliction of emotional distress asserted by the Claimants. The Claimants, however, failed to pay their half of a required arbitration fee by the October 29, 1993 deadline set by Washington Arbitration & Mediation Service, Inc. (WAMS). As a result, WAMS struck the dates tentatively scheduled for the arbitration—December 8 and 9. The Claimants paid their share of the fee on November 16, and demanded that the College proceed with the arbitration. The College refused, citing the failure of the Claimants to pay their share of the arbitration fee in a timely manner, and also their failure to respond to discovery requests within the time frame set out in the arbitration agreement. The WAMS Arbitration Fee Schedule provided that "[f]ailure to [pay fees] may result in postponement or cancellation." The arbitration dates set by WAMS were described as "tentative" and WAMS also told the parties that "[i]f you choose to reschedule this case for arbitration with [the arbitrator], it will still be necessary to prepay the estimated arbitration fees before a new date can be confirmed."

The Claimants moved in superior court to compel arbitration. The superior court denied the motion, based on its reading of RCW 7.04.040.[1] The court concluded that the Claimants' "burden was to prove [the College] defaulted in proceeding and . . . [the Claimants] failed to do so . . . ." Significantly, the College does not challenge the existence or validity of the arbitration agreement.

The College frames the issue as a review of a factual finding—whether there is substantial evidence to support the superior court's finding that the Claimants, not the College, were responsible for the default of the arbitration agreement. That question is not, however, dispositive because it assumes the superior court's authority to interpret the agreement and pass upon the question of default. That is an assumption we reject.

The question presented is more fundamental and is a question of law. It is whether the superior court had the authority to decide whether the agreement had been breached and what sanctions, if any, should be imposed as a result of any breach. We conclude the superior court did not have such authority. The arbitrator had the responsibility to decide whether the arbitration agreement had been breached and, if so, what sanctions, if any, should follow.

██ ██ We begin our analysis by noting the strong public policy in this state favoring arbitration of disputes. Among

---

[1]RCW 7.04.040 provides in part:

"(1) A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the court for an order directing the parties to proceed with the arbitration in accordance with their agreement. . . . If the court is satisfied after hearing the parties that no substantial issue exists as to the existence or validity of the agreement to arbitrate or the failure to comply therewith, the court shall make an order directing the parties to proceed to arbitrate in accordance with the terms of the agreement.

"(2) If the court shall find that a substantial issue is raised as to the existence or validity of the arbitration agreement or the failure to comply therewith, the court shall proceed immediately to the trial of such issue. If upon such trial the court finds that no written agreement providing for arbitration was made or that there is no default in proceeding thereunder, the motion to compel arbitration shall be denied."

other things, arbitration eases court congestion, provides an expeditious method of resolving disputes and is generally less expensive than litigation. *King County v. Boeing Co.*, 18 Wn. App. 595, 602, 570 P.2d 713 (1977). We construe the agreement then to enforce arbitration, if possible. *See Clearwater v. Skyline Constr. Co.*, 67 Wn. App. 305, 314, 835 P.2d 257 (1992) (settlement of controversies by arbitration is a highly favored method of dispute resolution), *review denied*, 121 Wn.2d 1005 (1993).

■■ The scope of an arbitrator's authority depends on the agreement to arbitrate. RCW 7.04; *Barnett v. Hicks*, 119 Wn.2d 151, 155, 829 P.2d 1087 (1992). Here, the most significant provision of this agreement for our discussion is section 3.06, "*Authority of Arbitrator*," which defines the arbitrator's authority. That provision grants to the WAMS arbitrator

> sole and exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of this Agreement. The arbitrator shall have jurisdiction to hear and rule on pre-hearing motions and discovery disputes. The arbitrator is authorized to hold pre-hearing conferences by telephone or in person as he/she deems necessary.

The agreement here provided a method for resolving both the substantive disputes for which the arbitration agreement was originally signed and also any procedural disputes which arise out of that document. Those methods must be "pursued before either party can resort to the courts for relief." *Tombs v. Northwest Airlines, Inc.*, 83 Wn.2d 157, 162, 516 P.2d 1028 (1973).

The arbitration agreement here limits the superior court's authority. It only permits the parties to "bring an action . . . to compel arbitration under this Agreement and to enforce an arbitration award." Agreement to Arbitrate Dispute, section 3.10, "Court Enforcement."

■ The superior court's authority in arbitration proceedings generally, and in this case in particular, is limited. It can only confirm, vacate, modify, or correct the

arbitration award. RCW 7.04.150-.170; *Barnett*, 119 Wn.2d at 156. Appellate review is likewise limited. *Barnett*, 119 Wn.2d at 157.

The only question, therefore, for the superior court here should have been "whether the parties bound themselves to arbitrate the particular dispute." *Meat Cutters Local 494 v. Rosauer's Super Markets, Inc.*, 29 Wn. App. 150, 154, 627 P.2d 1330, *review denied*, 96 Wn.2d 1002 (1981). And that is because "[i]f the dispute can fairly be said to involve an interpretation of the agreement, the inquiry is at an end and the proper interpretation is for the arbitrator." *Meat Cutters*, 29 Wn. App. at 154. The court here did more. It necessarily decided that the Claimants' failure to timely pay their portion of the arbitration fee and failure to timely respond to discovery requests amounted to a default of the arbitration agreement. And as a sanction, it then refused to compel arbitration and effectively terminated the agreement.

The agreement provided for payment of the arbitration fee "pursuant to the terms and conditions of payment imposed by [WAMS]." Agreement to Arbitrate Dispute, section 3.03. Those terms and conditions were established by the arbitration agreement, and, accordingly, the arbitrator, not the superior court, should have decided whether the agreement had been breached and what sanctions, if any, should follow.

The superior court erred in deciding both questions. The superior court had authority here only to compel arbitration. It erred in refusing to do so.

The order denying the motion to compel is reversed.

THOMPSON, C.J., and SCHULTHEIS, J., concur.