[No. 14883-1-III. Division Three. April 15, 1997.]

CAROLINA PEREZ, ET AL., as *Guardians, Appellants,* v. MID-CENTURY INSURANCE COMPANY, *Respondent.*

---

[18]*See* RCW 13.40.010(2)(c) and (h).

[19]*Rismon,* 75 Wn. App. at 293.

*David A. Thompson* and *Moore & Thompson,* for appellants.

*Walter G. Meyer, Jr., Donald A. Treat,* and *Meyer, Fluegge & Tenney,* for respondent.

KURTZ, J. — Summary judgment was entered in favor of Mid-Century Insurance Company and against the Perez family denying their request for declaratory and equitable relief disqualifying Yakima attorney David A. Thorner as an arbitrator in an underlying uninsured motorist (UIM) arbitration. The Perez family objects to Mr. Thorner's

participation as Mid-Century's party arbitrator on a tripartite arbitration panel, arguing that Mr. Thorner's close and continuing relationship with Mid-Century creates an inference of partiality. We affirm the order of the trial court.

## FACTS

Three-year-old Paul Perez was injured when a pickup truck backed into him and broke his leg. The child's medical expenses were covered by the tort-feasor's insurance policy and his parents' policy with Mid-Century. In addition, the tort-feasor's insurer paid its full limits of liability coverage. Paul's parents, Carolina and Pedro Perez, then asserted a UIM claim on behalf of their son. The parties were unable to agree on the amount of the $25,000 UIM limits needed to compensate Paul for his injuries. The Perez family demanded arbitration pursuant to the terms of their policy with Mid-Century.

The arbitration clause in the policy reads as follows:

> If an **Insured person** and we do not agree (1) that the person is legally entitled to recover **damages** from the owner or operator of an **underinsured motor vehicle,** or (2) as to the amount of payment under this Part, either that person or we may demand that the issue be determined by arbitration.

> In that event, the **Insured person** will select an arbitrator and we will select another. The two arbitrators will select a third. If they cannot agree on the third arbitrator within 30 days, the judge of a court having jurisdiction will appoint the third arbitrator. The **Insured person** will pay the arbitrator selected by that person. We will pay the arbitrator we select. The expense of the third arbitrator and all other expenses of arbitration will be shared equally.

> Arbitration will take place in the county where the **Insured person** lives. Local court rules governing procedures and evidence will apply. The decision in writing of any two arbitrators will be binding subject to the terms of this insurance.

Pursuant to these provisions, the Perezes' attorney

wrote to the senior claims representative for Mid-Century and nominated Yakima attorney Rodney K. Nelson as their arbitrator-nominee. In the same letter Perezes' attorney acknowledged his assumption that Mid-Century would choose either Walter G. Meyer or Mr. Thorner as its nominee. Mr. Meyer subsequently appeared as counsel of record for Mid-Century and nominated Mr. Thorner as Mid-Century's nominee to the arbitration panel.

Carolina and Pedro Perez subsequently brought action against Mid-Century, asking the court to declare their respective rights under the policy and to compel Mid-Century to name an impartial and unbiased person as its nominee to the UIM panel. The Perez family objected to Mr. Thorner's participation on the arbitration panel, contending his ongoing business and legal relationship with Mid-Century created the inference of partiality. The Perezes contend Mr. Thorner might be partial while serving on the panel because he would be motivated to keep any award small in an effort to retain his ongoing professional relationship with Mid-Century.

The Perezes submitted the affidavit and deposition testimony of Yakima attorneys Wiley Hurst and Richard Johnson to support their position. Both attorneys testified that most of the defense work in the Yakima area for Mid-Century Insurance had been referred to either Mr. Meyer or to Mr. Thorner. If one of these attorneys was chosen as defense counsel in a case, that attorney would then appoint the other as the party arbitrator to the tripartite panel. The experience of Mr. Hurst was that the attorney appointed by the insurer tended to act as an advocate for the insurer while serving as an arbitrator on the panel. Mr. Hurst testified he has never taken action to set aside an award or attempt to disqualify Mr. Thorner from serving as an arbitrator. Mr. Johnson testified Mr. Thorner never acted unfairly as an arbitrator. The arbitration panel made a unanimous award each time Mr. Johnson served on a panel with Mr. Thorner.

Mid-Century moved for summary judgment, requesting

the arbitration proceed pursuant to RCW 7.04 and alleging that neither the contract nor RCW 7.04 contained any provisions for the removal of an arbitrator before the time the award is made. The Perezes also moved for summary judgment, alleging the court must dismiss Mr. Thorner as a matter of law. The trial court granted Mid-Century's motion for summary judgment and ordered the arbitration proceed with Mr. Nelson and Mr. Thorner serving on the arbitration panel along with a third arbitrator to be chosen by Mr. Nelson and Mr. Thorner. The Perezes' motion for summary judgment was denied. The Perezes appealed, assigning error to the court's refusal to find Mr. Thorner ineligible for service as an arbitrator. Mid-Century cross-appealed, arguing that if the appearance of fairness doctrine disqualified Mr. Thorner, the trial court erred in not also dismissing Mr. Nelson, the Perezes' arbitrator-nominee.

## ANALYSIS

The sole issue in this case is whether a court may intervene in the prearbitration process to disqualify an arbitrator-nominee to a tripartite panel where one party alleges that the nominee is partial in that the nominee has an ongoing professional relationship with the party that made the appointment.

The court engages in the same inquiry as the trial court when reviewing an order granting summary judgment. *Meyers Way Dev. Ltd. Partnership v. University Sav. Bank*, 80 Wn. App. 655, 665, 910 P.2d 1308, *review denied*, 130 Wn.2d 1015 (1996). Summary judgment is appropriate if the record before the court shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995).

There is a strong public policy in Washington State favoring arbitration of disputes. *Munsey v. Walla Walla College*, 80 Wn. App. 92, 94, 906 P.2d 988 (1995). The

purpose of arbitration is to avoid the formalities, the expense, and the delays of the court system. *Barnett v. Hicks,* 119 Wn.2d 151, 160, 829 P.2d 1087 (1992). Arbitration proceedings may be casually structured. *Barnett,* 119 Wn.2d at 155. The goals of the arbitration process would not be served if arbitrators and judges were held to the same high standard. *Schreifels v. Safeco Co.,* 45 Wn. App. 442, 449 n.3, 725 P.2d 1022 (1986).

 The arbitration process set forth in the insurance contract is a tripartite process where each party designates one arbitrator, and these two party arbitrators then agree on a third arbitrator who is presumably neutral. Any two arbitrators must agree before an award is made. It is widely acknowledged that the party arbitrators serving on a tripartite panel may not be completely neutral. The benefit to the parties is that their nominees are frequently experts in the area, and they are chosen as arbitrators precisely because of their involvement and expertise. *Schreifels,* 45 Wn. App. at 449 n.3; *Astoria Med. Group v. Health Ins. Plan,* 11 N.Y.2d 128, 138, 182 N.E.2d 85, 227 N.Y.S.2d 401 (1962). We are not persuaded by the Perezes' argument that UIM claimants are entitled to three impartial arbitrators on a UIM tripartite panel or that the tripartite process is somehow unfair. What the Perezes view as impermissible partiality is instead the strength of the tripartite process. We find nothing inherently unfair about the selection process for tripartite panels or the tripartite process itself, even where the arbitration clause providing for the tripartite panel is included in a form contract.

The Perezes contend that the courts have the power to disqualify an arbitrator during the prearbitration or arbitration stage of the proceedings. To support this position, the Perezes urge us to adopt a full disclosure requirement for arbitrators and would have the courts disqualify any arbitrator who had a disclosure to make.

Two Washington cases have discussed disclosure requirements for arbitrators; both of these cases have addressed

the disclosure issue after the arbitration award had been made. *Schreifels*, 45 Wn. App. 442; *St. Paul Ins. Co. v. Lusis*, 6 Wn. App. 205, 492 P.2d 575, 56 A.L.R.3d 687 (1971), *review denied*, 80 Wn.2d 1009 (1972). These cases demonstrate that Washington courts have rejected the adoption of a full disclosure requirement. The *Lusis* court held that an arbitrator's failure to disclose he and one of the insured's counsel were on the Board of Governors of the Washington State Trial Lawyers Association did not constitute sufficient grounds to vacate the arbitrator's award. The sole arbitrator in *Lusis* had been chosen by the parties to resolve a claim under UIM coverage. The *Lusis* court concluded that not every relationship was disclosable and found a general duty to disclose a relationship or circumstance where it was reasonable to infer the presence of bias or absence of impartiality. A different test was established where there was public knowledge of the circumstance or relationship. The question when there was a substantial degree of notoriety was whether or not it would be unreasonable for the arbitrator to assume the relationship was known to the parties to the arbitration. *Lusis*, 6 Wn. App. at 214.

In *Schreifels*, UIM claimants contended an arbitration award was tainted because one of the arbitrators and his law firm had an ongoing professional relationship with two of the parties to the arbitration. Applying the second test in *Lusis*, the *Schreifels'* court found no duty to disclose where the facts showed it was reasonable for the challenged party arbitrator to assume the claimants and their counsel knew of his relationship to Safeco and Transamerica.

Washington courts are reluctant to intervene in the arbitration process, deferring with good reason to public policy and statutory mandate. *Munsey*, 80 Wn. App. at 94-95. The holdings in *Schreifels* and *Lusis* also indicate the Washington courts will take a fairly narrow approach when construing RCW 7.04 and intervening in the arbitration process. We agree that the duty to disclose established

in the case law might give rise to a situation where a court could be compelled to disqualify an arbitrator-nominee when presented with substantial evidence of dishonesty or significant financial indebtedness. The Perezes are mistaken in their belief that this duty to disclose compels the court to disqualify any arbitrator who is required to make a disclosure. In most circumstances, the duty to disclose serves its intended purpose by reminding the parties to be aware of any relationships they might have that could affect their judgment as an arbitrator. Thus, the act of disclosure serves as a cure rather than an excuse for intervention by the courts.

The Perezes have failed to show any evidence to justify the disqualification of Mr. Thorner as an arbitrator in the underlying tripartite arbitration proceeding. The Perezes do not submit any evidence showing Mr. Thorner to be corrupt, dishonest, or financially indebted to Mid-Century. The Perezes have alleged only an inference of partiality and the facts indicate their attorney had actual knowledge of the relationship between Mr. Thorner and Mid-Century. The facts are insufficient to trigger a duty to disclose under the standard applied in *Schreifels* and insufficient to serve as a basis to prompt this or any court to intervene in the arbitration process.

## HOLDING

We affirm the summary judgment entered in favor of Mid-Century Insurance Company and against the Perez family denying their request for declaratory and equitable relief disqualifying Mr. Thorner as an arbitrator in the underlying UIM arbitration. In view of this ruling, there is no need to consider the cross-appeal.

SCHULTHEIS, A.C.J., and MUNSON, J. Pro Tem., concur.