# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| RICHARD JENSEN, an individual, JENSEN ENTERPRISES, INC., a Washington corporation,<br><br>Appellants,<br><br>v.<br><br>JOHN MISNER, an individual,<br><br>Respondent. | No. 75908-6-I<br><br><br><br><br><br>PUBLISHED OPINION<br><br>FILED: December 26, 2017 |

VERELLEN, C.J. — The Washington uniform arbitration act directs arbitrators to disclose "any known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding."[1] There is no presumption of evident partiality unless the arbitrator fails to disclose "a known, direct, and material interest in the outcome of the arbitration proceeding or a known, existing, and substantial relationship with a party."[2] And to vacate an award, any nondisclosure "must have impacted the award."[3]

Richard Jensen contends the superior court should have vacated a 2016 Financial Industry Regulatory Authority (FINRA) arbitration ruling in favor of John

---

[1] RCW 7.04A.120(1).

[2] RCW 7.04A.120(5).

[3] Hanson v. Shim, 87 Wn. App. 538, 548, 943 P.2d 322 (1997).

Misner because of omissions and misrepresentations by two of three arbitrators. Two panel members previously served together on a 2001 FINRA panel, and one of the panel members was affiliated with a law firm sued by its landlord in 1995, on claims allegedly similar to those at issue in the arbitration.

Jensen does not establish evident partiality. Neither service on the 2001 panel nor the 1995 lawsuit are facts that a reasonable person would consider likely to affect the impartiality of the arbitrators. Neither arbitrator had an interest in the outcome nor any relationship with a party required for a presumption of evident partiality. And speculation that the two arbitrators would have been removed by Jensen does not establish a nondisclosure that must have impacted the award.

Jensen's alternate theories of arbitrator misconduct, undue means, and exceeding authority are not persuasive. Jensen provides no compelling authority that the alleged violations of the FINRA rules establish a statutory ground to vacate.

Finally, because the appeal includes debatable issues, Misner is not entitled to attorney fees as a sanction under RAP 18.9.

Therefore, we affirm.

## FACTS

Jensen Enterprises, Inc., owned by Richard Jensen, purchased securitized real properties through Pacific West Securities, Inc. Two of the five purchased properties performed well, but the other three were unsuccessful.

Jensen sued John Misner and several others involved in the purchase. Jensen alleged Misner's poor investment recommendations constituted fraud,

breach of contract, and breach of fiduciary duty. The court ordered FINRA arbitration of the claims against Misner.

FINRA empaneled a three-member arbitration panel, including William Bergsten and Jonathan Kaiser. Later, Paul Meyer replaced the third member. In 2001, Meyer and Bergsten had served together on an arbitration panel. In his FINRA disclosure checklist, Meyer marked "No" to the question asking if he had served with another panel member.[4] Bergsten also marked "No" in his checklist before Meyer was added and did not update his answer once Meyer was designated.[5] The disclosure report for each arbitrator includes a section for listing names and identifying numbers of past cases and awards the arbitrator was involved in. The disclosure reports for Meyer and Bergsten both included the 2001 case they had served on together.

In 1995, the law firm where Bergsten worked was involved in a legal dispute with its landlord. Under the lease, the law firm had a right of first refusal that frustrated the landlord's efforts to refinance his building. The landlord filed a lawsuit alleging the law firm's breach of contract, fraud, and breach of fiduciary duty for failing to properly advise the landlord, who trusted the firm due to his friendship with a partner. Bergsten had no dealings with the landlord, but was

---

[4] The parties cite Clerk's Papers (CP) at 55 as Meyer's disclosure report, but CP 55 is part of Bergsten's disclosures. It appears Meyer's documents are not included in the record on appeal. The parties do not dispute Meyer marked "No" in his checklist, and that the parties received his checklist and disclosure report.

[5] CP at 55.

named in the lawsuit because the relevant legal authority at that time required it.[6]

The 1995 lawsuit settled in favor of the law firm after a summary judgment ruling.

A question in the FINRA disclosures asked if the arbitrator has ever been involved

in a dispute "involving the same or similar subject matter as the arbitrator."[7]

Bergsten marked "No."[8]

The panel ruled 2-1 in favor of Misner. Meyer and Bergsten found no

liability, but Kaiser found in favor of Jensen.

Jensen moved to vacate the FINRA award, arguing there were material

nondisclosures and misrepresentations by the arbitrators, including prior service

on the 2001 panel and the 1995 litigation of substantially similar claims. The King

County Superior Court denied Jensen's motion to vacate and confirmed the

FINRA award. Jensen appeals.

## ANALYSIS

Washington public policy favors finality of arbitration awards.[9] In

Washington, "arbitration proceedings are wholly statutory, and the rights of the

---

[6] CP at 613 ("As I recall, [Bergsten] was not even interviewed by the outside counsel. And while he would have been aware of the Lawsuit, he would not have had personal dealings with the issues in the Lawsuit." "At that time, under Washington law, general partnerships were not considered separate entities. Therefore, the general accepted practice at the time was to name all partners in a partnership when filing claims against the partnership.").

[7] CP at 56.

[8] CP at 56.

[9] S&S Const., Inc. v. ADC Props., LLC, 151 Wn. App. 247, 254, 211 P.3d 415 (2009).

parties thereto are governed and controlled by statutory provisions."[10] In 2005, Washington adopted the revised uniform arbitration act, codified at chapter 7.04A RCW (referred to as the Washington uniform arbitration act). The revisions were promulgated in 2000 by the National Conference of Commissioners on Uniform State Laws.[11]

"Judicial review of arbitration awards is strictly limited to the grounds set forth in the Washington uniform arbitration act, chapter 7.04A RCW."[12] The burden of proof is on the party seeking to vacate the award.[13]

Jensen asserts the arbitration award should be vacated on grounds of evident partiality, misconduct, undue means, and exceeding the authority of the arbitrators. We disagree.

## I. Vacation of Arbitration Award

### (a) "Evident Partiality"

Jensen contends Bergsten and Meyer's misrepresentations and nondisclosures constitute evident partiality. Evident partiality is a longstanding concept in arbitration. Both the 1956 uniform arbitration act[14] and the 2000 revised uniform arbitration act (RUAA)[15] include evident partiality as a ground to

---

[10] St. Paul Ins. Cos. v. Lusis, 6 Wn. App. 205, 208, 492 P.2d 575 (1971).

[11] 7 pt. IA U.L.A. 1, prefatory note at 3 (2009).

[12] S&S Const., 151 Wn. App. at 254.

[13] Schreifels v. Safeco Ins. Co., 45 Wn. App. 442, 445, 725 P.2d 1022 (1986).

[14] 7 U.L.A. 514, § 12(a)(2).

[15] 7 U.L.A. 77, § 23(a)(2)(A).

vacate an arbitration award. Cases from other jurisdictions applying the RUAA are instructive, and official comments to the uniform act are persuasive.[16] The Federal Arbitration Act has a similar evident partiality provision.[17] There are significant distinctions between the Federal Arbitration Act and the RUAA.[18] We may look to federal authority construing an analogous provision of the federal statute for guidance.[19] Federal cases have taken especially divergent views of evident partiality.[20] And there is minimal recent case law from other states addressing

---

[16] RCW 7.04A.901 provides that "[i]n applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to the subject matter among states that enact it." As a result, "authority from other jurisdictions [applying the RUAA] is instructive," Marcus & Millichap Real Estate Inv. Servs. of Seattle, Inc. v. Yates, Wood & MacDonald, Inc., 192 Wn. App. 465, 472 n.5, 369 P.3d 503 (2016), and this court views official comments on UAA and RUAA as persuasive authority. Rimov v. Schultz, 162 Wn. App. 274, 280 n.3, 253 P.3d 462 (2011); Townsend v. Quadrant Corp., 153 Wn. App. 870, 879, 224 P.3d 818 (2009), aff'd on other grounds, 173 Wn.2d 451, 268 P.3d 917 (2012).

[17] 9 U.S.C. § 10(a)(2).

[18] See generally Timothy J. Heinsz, The Revised Uniform Arbitration Act: An Overview, 56 DISP. RESOL. J. 28, 30 (2001).

[19] See Seattle Packaging Corp. v. Barnard, 94 Wn. App. 481, 486, 972 P.2d 577 (1999) (considering federal authority when construing fraud as grounds to vacate an arbitration award; "Federal authority interpreting similar statutes can provide guidance in resolving issues of first impression.").

[20] The Restatement (Third) U.S. Law of International Commercial Arbitration § 4-20, Evident Partiality by the Arbitrators (2012), comment b, provides a crisp summary of the development of federal law on evident partiality:

> Under U.S. law, "evident partiality" is the standard for determining when an arbitrator is improperly biased in a manner that precludes a party from having a meaningful opportunity to present its case. The Supreme Court has not provided any clear or recent guidance on the meaning of this statutory term. In the absence of such guidance, lower federal courts have diverged significantly in defining "evident partiality," as that term is used in the FAA. Although numerous tests have been articulated, they fall into three

evident partiality under the RUAA.[21] We rely on the Washington statute and case law.

---

general categories. First, some courts have required for application of this ground that an arbitrator have a connection to one of the parties or the dispute that creates the appearance of partiality or impropriety. This standard is often described as akin to the conflict-of-interest standard imposed on judges. Second, a few courts have required for satisfaction of this ground that an arbitrator have some personal interest, including but not limited to a pecuniary interest, in the outcome of the dispute, as when the arbitrator has an ongoing contractual relationship with one of the parties. This view is often characterized as requiring proof of actual bias. The third category of cases might be considered an intermediate view. Under this view, to establish evident partiality, a party must present evidence that would cause an objective, disinterested observer who is fully informed of the facts relevant to the arbitrator's conduct or conflicts to develop a significant doubt about the fundamental fairness of the proceeding in that case.

The *Restatement* offers a summary of factors courts consider in applying the intermediate view:

In determining whether this standard is satisfied, a court considers the specific facts of each individual case. In evaluating these facts, courts generally consider: (1) the extent and character of the relevant personal interest, pecuniary or otherwise, or relationship of the arbitrator; (2) the directness of the relationship between the arbitrator and the party that it was alleged to favor; (3) the connection between the arbitrator's interest or the relationship and the arbitration; (4) the proximity in time between the interest or relationship and the arbitral proceeding; (5) any relevant industry practices that may affect the parties' expectations regarding relationships between the arbitrator, and the parties and their dispute; and (6) the extent to which the arbitrator undertook a reasonable investigation to discover potential conflicts and actually knew of, or should have known of, the information that was not disclosed. A court may also consider whether the arbitrator undertook a reasonable investigation to discover potential conflicts and whether the arbitrator was aware of the information that was not disclosed.

[21] See cases collected, "Setting aside arbitration award on ground of interest or bias of arbitrators–commercial, business, or real estate transactions,"

The court must vacate an award if there was "evident partiality by an arbitrator appointed as a neutral."[22] RCW 7.04A does not define "evident partiality," but provides clear guidance regarding arbitrator disclosures. In Washington, an arbitrator has a limited obligation to disclose. RCW 7.04A.120(1) directs arbitrators to disclose

> any known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding, including:
>
>> (a) A financial or personal interest in the outcome of the arbitration proceeding; and;
>
>> (b) An existing or past relationship with any of the parties to the agreement to arbitrate or the arbitration proceeding, their counsel or representatives, witnesses, or the other arbitrators.

RCW 7.04A.120(5) provides that "[a]n arbitrator appointed as a neutral who does not disclose a known, direct, and material interest in the outcome of the arbitration proceeding or a known, existing, and substantial relationship with a party is presumed to act with *evident partiality* under RCW 7.04A.230(1)(b)."[23]

In Perez v. Mid-Century Insurance Co., the court noted, "Washington courts are reluctant to intervene in the arbitration process, deferring with good reason to

---

67 A.L.R.5th 179 (1999); "Setting aside arbitration award on ground of interest or bias of arbitrators–labor disputes," 66 A.L.R.5th 611 (1999); "Setting Aside Arbitration Award on Ground of Interest or Bias of Arbitrators–Torts," 64 A.L.R.5th 475 (1998); "Setting aside arbitration award on ground of interest or bias of arbitrators–insurance appraisals or arbitrations," 63 A.L.R.5th 675 (1998).

[22] RCW 7.04A.230(1)(b).

[23] (Emphasis added.)

public policy and statutory mandate."[24] Acknowledging this "fairly narrow approach," the Perez court observed:

> In most circumstances, the duty to disclose serves its intended purpose by reminding the parties to be aware of any relationships they might have that could affect their judgment as an arbitrator. *Thus, the act of disclosure serves as a cure rather than an excuse for intervention by the courts.*[25]

In St. Paul Ins. Companies v. Lusis, the court held that an arbitrator's failure to disclose he and one of the insured's counsel were on the Board of Governors of the Washington State Trial Lawyers Association did not constitute sufficient grounds to vacate the arbitrator's award.[26] The Lusis court concluded that not *every* relationship is disclosable and found a general duty to disclose a relationship or circumstance where it was reasonable to infer the presence of bias or absence of impartiality.[27] Lusis "demonstrates that Washington courts have rejected the adoption of a full disclosure requirement."[28]

More recently, our court has confirmed arbitrators have a "general duty to disclose a circumstance or relationship that bears on the question of impartiality

---

[24] 85 Wn. App. 760, 767, 934 P.2d 731 (1997).

[25] Id. at 767-68 (emphasis added).

[26] 6 Wn. App. 205, 205-09, 492 P.2d 575 (1971).

[27] Id.

[28] S&S Const., 151 Wn. App. at 260 (citing id. at 767). Consistent with Lusis, in Schreifels, 45 Wn. App. at 449, the court rejected an uninsured motorist coverage claimant's argument that an arbitration award was tainted by evident partiality because one of the arbitrators and his law firm had an ongoing professional relationship with two of the parties to the arbitration. The court focused on lack of prejudice.

*where that relationship or circumstance creates a reasonable inference of the presence of bias or the absence of impartiality."*[29]

Jensen's evident partiality argument fails for several reasons. First, he fails to establish a violation of statutory disclosure requirements. It is not reasonable to infer a lack of impartiality just because two arbitrators served together on a single arbitration years earlier. This isolated[30] and remote[31] incident does not constitute a relationship with another arbitrator and, more importantly, does not implicate bias or impartiality. It is not a relationship or circumstance involving an interest in the outcome and is not a relationship with a party. There is no obligation to disclose under RCW 7.04A.120(1). And notably, Bergsten and Meyer's participation in the 2001 arbitration was included in the disclosure report lists of their past cases. Sitting together on a single FINRA panel 15 years ago is not a disclosable relationship under our statutes or case law.

Neither is it reasonable to infer that an arbitrator is likely biased or impartial just because in 1995, the arbitrator was a party to a lawsuit alleging general legal theories in a completely different setting. A landlord tenant dispute is not similar to a failed investment. And the arbitrator had a nominal role in the landlord tenant dispute. For example, arbitrators are not likely to be partial in any contract dispute

---

[29] Id. at 258 (citing Hanson, 87 Wn. App. at 547) (emphasis added).

[30] See Lusis, 6 Wn. App. at 210 ("'occasional contacts even with one of the parties to the arbitration are neither ground for disqualification nor dictate a necessity for disclosure'") (quoting Perl v. Gen. Fire & Cas. Co., 34 A.D.2d 748, 310 N.Y.S.2d 196 (1970)).

[31] See S&S Const., 151 Wn. App. at 259 (holding that events 25 years prior were "clearly inadequate to prove or infer, impropriety").

just because they have been a party to a completely unrelated and remote contract dispute. The duty to disclose does not apply.

Second, Jensen suggests the "failure to make a required disclosure" triggers a presumption of evident partiality.[32] But RCW 7.04A.120(5) allows a presumption of evident partiality only when an arbitrator has a "material interest in the outcome of the arbitration proceeding or a known, existing, and substantial relationship with a party." Neither an interest in the outcome nor a relationship with a party is alleged or established here. There is no presumption of evident partiality.

Third, even when a "relationship or circumstance creates a reasonable inference of the presence of bias or the absence of impartiality . . . the party seeking vacation must still show prejudice from the nondisclosure."[33] Proving the impact of a nondisclosure is often problematic. In some areas of the law, we recognize that failure to disclose material information gives rise to a rebuttable presumption of reliance.[34] But in Washington, "[t]o show the required prejudice, the [arbitrator's] nondisclosure *must have impacted the award*."[35]

---

[32] Br. of App. at 8.

[33] Hanson, 87 Wn. App. at 547 (citing Perez, 85 Wn. App. at 767; Lusis, 6 Wn. App. at 213).

[34] Morris v. Int'l Yogurt Co., 107 Wn.2d 314, 328, 729 P.2d 33 (1986) (franchise fraud omission to disclose material fact); Deegan v. Windermere Real Estate/Ctr.-Isle, Inc., 197 Wn. App. 875, 886, 391 P.3d 582 (2017) (omission of material fact consumer protection claim); Guarino v. Interactive Objects, Inc., 122 Wn. App. 95, 119, 86 P.3d 1175 (2004) (securities fraud omission to disclose material fact).

[35] Hanson, 87 Wn. App. at 548 (emphasis added).

Jensen argues he was prejudiced by the nondisclosure because he would have selected other arbitrators, but that is inadequate. Specifically, such a contention that nondisclosure limits a right to choose a neutral arbitrator "defeats the prejudice requirement because any nondisclosure limits choice."[36] Similarly, Jensen's argument that he would have rejected or disqualified Bergsten or Meyer fails to establish the required prejudice.[37] In this setting, without some evidence that the nondisclosure impacted the award, Jensen's self-serving suggestion that he would have stricken the arbitrators falls short.[38]

Finally, Jensen argues Bergsten's 1995 lawsuit and previous service with Meyer on the 2001 panel violated the FINRA disclosure rules. But the FINRA rules do not provide a contractual post-decision remedy for arbitrator nondisclosure.[39] This court has recognized that even though parties have agreed to particular procedural rules and remedies, the ultimate question for the court is whether the statutory grounds to vacate have been established.[40] Jensen cites no Washington authority supporting the application of disclosure requirements imposed by rule as grounds to vacate an arbitration award.

---

[36] Id.

[37] See Schreifels, 45 Wn. App. at 448 (no prejudice shown when no claim made that undisclosed relationship impacted the outcome of the hearing).

[38] Hanson, 87 Wn. App. at 548.

[39] FINRA Arbitration Rules 12406, 12407 (2016) (arbitrator recusal and removal of arbitrator by director).

[40] Lusis, 6 Wn. App. at 208 ("our concern is whether or not a violation of the AAA rules" took place and, if so, whether there was a violation of the arbitration statute).

Jensen relies heavily on Citigroup Global Markets, Inc. v. Berghorst for the proposition that violation of arbitration rules may provide grounds to vacate an arbitration award.[41]  But that unpublished and nonbinding Florida federal district court opinion is not persuasive.  The Berghorsts brought several claims related to their investments against Citigroup.[42]  The arbitrator did not disclose he had a pending $20 million claim against another large national bank.[43]  The court ruled that the arbitrator should have disclosed his conflict of interest because his pending claims "were not '*remote, uncertain, and speculative.*'  They were fresh wounds, battles [the arbitrator] was fighting during the very time he was serving as an arbitrator in this matter."[44]

Here, the 1995 lawsuit and the 2001 panel are tangential, unrelated, remote, and uncertain.  They do not evoke the same concerns addressed in Citigroup Global Markets.

Jensen suggests cases discussing the prejudice required to vacate a judgment for juror misconduct are instructive in this setting, but offers no authority or persuasive argument supporting this analogy.

Under the Washington statute and case law, Jensen does not establish evident partiality by an arbitrator.

---

[41] No. 11-80250-CIV, 2012 WL 5989628, at *1 (S.D. Fla. 2012) (unpublished).

[42] Id.

[43] Id.

[44] Id. at *4 (internal citation omitted) (emphasis added).

### (b) Other Grounds for Vacation

Jensen contends failure to follow FINRA disclosure rules is misconduct warranting vacation, but cites no compelling authority. And he must show misconduct "prejudicing the rights of a party."[45] As discussed, there is no showing of such prejudice.

Jensen also contends the FINRA award was procured by undue means and the arbitrator exceeded his powers. Specifically, because Bergsten and Meyer "executed an Oath and Checklist which contained affirmative misrepresentations," they were not "vested with the requisite FINRA authority to act as arbitrators."[46]

The court must vacate an arbitration award if the award was procured by corruption, fraud, or other undue means.[47] Here we find federal case law helpful. "Undue means" connotes behavior that is immoral, if not illegal.[48] "'[U]ndue means' requires some type of bad faith in the procurement of the award."[49]

Jensen suggests he would have struck or removed Meyer and Bergsten from the panel had he known the additional information. But these vague and

---

[45] RCW 7.04A.230(1)(b)(iii).

[46] Br. of App. at 34.

[47] RCW 7.04A.230(1)(a).

[48] See A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1403-04 (9th Cir. 1992).

[49] Shearson Hayden Stone, Inc. v. Liang, 493 F. Supp. 104, 108 (N.D. Ill. 1980); see PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship, 187 F.3d 988, 991 (8th Cir. 1999) ("The term 'undue means' must be read in conjunction with the words 'fraud' and 'corruption' that precede it in the statute.").

repeated assertions do not establish corruption, fraud, or other undue means.[50]

The premise that *any* overlooked disclosure reveals bias, corruption, or fraud is

not compelling. The record before this court merely establishes a remote, trivial,

and inconsequential oversight.

Jensen also makes a passing reference to an arbitrator acting "in excess of

their jurisdiction."[51] But Washington case law narrowly views that ground for

vacation. Excess of jurisdiction turns on a showing of an error of law such as

deciding issues not referred to arbitration or other defects on the face of the

award.[52] Jensen does not offer authority that we must take a broader view of this

ground, nor does he show a defect on the face of the award.

We conclude the superior court properly denied Jensen's request to vacate

the arbitration award and the arbitrators did not exceed their powers.

## II. Service

Misner contends Jensen failed to serve the individuals named in Misner's

cross claim. As noted by the FINRA panel, the cross claim is moot. The cross

---

[50] Am. Postal Workers Union, AFL, CIO v. United States Postal Svc., 52 F.3d 359, 362 (D.C. Cir. 1995) ("undue means must be limited to an action by a party that is equivalent in gravity to corruption or fraud, such as a physical threat to an arbitrator or other improper influence"); Nat'l Cas. Co. v. First State Ins. Grp., 430 F.3d 493, 499 (1st Cir. 2005) ("[t]he best reading of the term 'undue means' . . . is that it describes underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute either").

[51] Br. of App. at 34.

[52] Salewski v. Pilchuck Veterinary Hosp., Inc., P.S., 189 Wn. App. 898, 903-04, 359 P.3d 884 (2015); Boyd v. Davis, 127 Wn.2d 256, 263, 897 P.2d 1239 (1995) ("In the present case, the face of the arbitral award alone does not exhibit an erroneous rule of law or a mistaken application of law. Therefore, no support exists for Petitioner's position that the arbitrator exceeded his power.").

claim respondents had no interest in the motion to vacate. Failure to serve is of no consequence.

### III. Attorney Fees

Misner contends he is entitled to attorney fees as a sanction for a frivolous appeal. Although unsuccessful, Jensen raised debatable issues.[53] Moreover, we resolve all doubts as to whether an appeal is frivolous in favor of the appellant.[54] We conclude Misner is not entitled to imposition of attorney fees.

Therefore, we affirm.

WE CONCUR:

---

[53] Olsen Media v. Energy Sciences, 32 Wn. App. 579, 588, 648 P.2d 493 (1982).

[54] Kinney v. Cook, 150 Wn. App. 187, 195, 208 P.3d 1 (2009).