IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| GARRETT RANCHES LLC, a Washington Limited Liability Company, | ) ) ) | No. 33175-0-III |
| Respondent, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| LARRY HONN FAMILY LLC, a Washington Limited Liability Company, | ) ) ) ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — The Larry Honn Family, LLC (the Honns) appeal the

trial court's confirmation of an arbitration award in favor of Garrett Ranches, LLC (the

Garretts). The Honns argue (1) the trial court erred when it appointed the nonparty

arbitrator because the Garretts failed to establish that the parties' agreed method for

appointing an arbitrator had failed, (2) the trial court erred in not vacating the arbitration

award, given the prior professional and current social relationships between the nonparty

arbitrator and the Garretts' counsel, (3) the trial court erred in not vacating the arbitration

award for obvious error, and (4) the trial court erred in not recusing itself. We disagree

with the Honns' arguments and affirm.

FACTS AND PROCEDURE

In September 2010, the Honns and the Garretts entered into a "Cash Rent Farm Lease with Option to Purchase." Clerk's Papers (CP) at 312. Under the terms of the lease, the Honns leased certain farmland in Whitman County to the Garretts. The lease also contained an option for the Garretts to purchase the land. Under the terms of the lease:

> 15. Arbitration: In the event any dispute shall arise between the parties, or with respect to this Lease, then and in that event the parties shall submit such issues to binding arbitration in accordance with R.C.W. 7.04A. Each party shall appoint one arbitrator, the two arbitrators shall appoint a third arbitrator, and the three arbitrators shall meet and decide any issues submitted to them within thirty (30) days of their appointment, which decision shall be final and binding on both parties. The arbitrators shall have all the powers and duties as are set forth in R.C.W. Chapter 7.04A. Venue shall be in Whitman County, Washington.

CP at 317.

Soon after the lease was entered, the Honns and the Garretts began to dispute its validity and terms. The matter was submitted to arbitration in 2010, where the arbitrators determined that both the lease and option were valid and enforceable. The matter was again submitted to arbitration in 2011, as the parties could not agree to the terms of the sale pursuant to the option. In an unpublished 2013 case, this court affirmed the trial

2

court orders confirming the arbitration awards in favor of the Garretts. *See Garrett Ranches LLC v. Larry Honn Family LLC*, noted at 177 Wn. App. 1014, 2013 WL 5658373. In the first two rounds of arbitration, Read Smith served as the Garretts' party arbitrator, David Gittins was the Honns' party arbitrator, and Dwayne Blankenship was the nonparty arbitrator.

This appeal stems from a further round of arbitration between the Honns and the Garretts. The subject of this round was whether the option to purchase was unenforceable for lack of consideration. Mr. Smith remained the Garretts' party arbitrator, but the Honns chose a new party arbitrator, Frank Gebhardt.

On September 25, 2014, the Garretts filed a motion with the trial court requesting that it appoint Dwayne Blankenship, the nonparty arbitrator in the prior arbitrations, as the third arbitrator for the current matter. The Garretts' counsel submitted a declaration that stated the party arbitrators had reached a deadlock on selection of the nonparty arbitrator. Attached to the declaration were e-mails where the Garretts' counsel told the Honns' counsel: "I am under the impression that our two arbitrators have not chosen a third arbitrator because of confusion on the issue." CP at 11. In the chain of response e-mails, the Honns' counsel did not deny a deadlock, but rather the two attorneys began to argue regarding Mr. Blankenship's qualifications. In response to the Garretts' motion,

3

the Honns asserted that the party arbitrators were not deadlocked, and that appointment of any nonparty arbitrator recommended by a party would be inherently biased.

The Honorable David Frazier presided over the October 3, 2014, motion hearing. Instead of appointing Mr. Blankenship (as suggested by the Garretts), Judge Frazier gave the party arbitrators two additional weeks to agree on a nonparty arbitrator. Absent an agreement by that time, Judge Frazier indicated that Timothy Esser would be appointed. Judge Frazier explained his choice of Mr. Esser on the record:

> I'm not appointing [Mr. Esser] because he has patience. I'm appointing him because I know him very well and he has no patience. And this is a case that needs someone that isn't going to put up with the garbage that this Court has been presented with, with frivolous motions and all of the procedural background.

Report of Proceedings (RP) (Oct. 3, 2014) at 14.

Soon after the October 3, 2014 hearing, the Honns discovered that in 2009, Mr. Esser left the predecessor firm of Libey & Ensley. Libey & Ensley represented the Garretts in the current matter. In addition, Gary Libey, of Libey & Ensley, drafted the lease at issue.

On October 14, 2014, the Honns moved for reconsideration of the appointment of Mr. Esser as the third neutral arbitrator, and also moved to disqualify Libey & Ensley from representing the Garretts. Judge Frazier presided over both motions on October 24,

4

2014. Judge Frazier denied the motion to disqualify Libey & Ensley, since the evidence the Honns sought from Mr. Libey was obtainable through other sources. Judge Frazier also noted that it was highly unlikely Mr. Libey would be called as a witness since there was a high possibility "[the] case is going to get thrown out of arbitration if the law is applied," and "I think the issue's res judicata here." RP (Oct. 24, 2014) at 22-23.

As for the motion to reconsider the appointment of Mr. Esser, Judge Frazier noted that although he was uncertain that the party arbitrators were deadlocked, they had not selected a third neutral arbitrator by the deadline. He did not envision a conflict based on Mr. Esser serving as the third neutral arbitrator, because since the time the partnership between Mr. Esser and Mr. Libey ended, both attorneys had represented opposing sides and "had pretty good knock-down, drag-out fights" in Judge Frazier's courtroom. RP (Oct. 24, 2014) at 26. However, Judge Frazier nominated three alternatives in the event Mr. Esser decided to recuse himself from the arbitration. Mr. Esser officially became the nonparty arbitrator on October 17, 2014.

In early November 2014, Mr. Esser made the following mandatory arbitrator disclosures:

> I know of no facts which would affect my impartiality. I have never had contact in any manner with either the Garretts or Mr. & Mrs. Larry Honn. As you know, I was partners for many years with Mr. Libey. And during that time, approximately eight years ago, I represented Larry Honn,

5

Jr. on a personal matter, it had nothing to do with his family's business interests.

CP at 222. In mid-November 2014, the Honns' counsel sent a letter to Mr. Esser that requested he step down as the nonparty arbitrator because "[i]t has come to my attention by way of an affidavit that you and Mr. Libey may still have an ongoing friendship which could influence your decisions in the pending arbitration." CP at 224. The affidavit, from an individual not involved in the litigation, stated "I observed Mr. Libey and Mr. Esser walking down the street together," and "I see them, along w/Judge Fraiser [sic], regularly frequenting the local restaurants." CP at 225. Mr. Esser refused to recuse himself as the nonparty arbitrator.

The arbitration panel issued an award in favor of the Garretts on January 23, 2015.[1] Mr. Esser authored the arbitration award. The Garretts' arbitrator joined with Mr. Esser, and the Honns' arbitrator wrote a dissent. The arbitration award concluded that "[t]he Garretts may proceed with their purchase of the property for the cash price set forth in their Lease/Option Agreement and upon the terms set forth in the second arbitration award." CP at 146. Concerning consideration for the option, the award stated "we have

---

[1] The Honns' arbitration summary judgment theory was that they were entitled to withdraw the option before it was accepted, as it contained no independent consideration. The Garretts' arbitration summary judgment theory was that res judicata barred the Honns' action, and even if it did not, the mutual promises, rights, and obligations

multiple promises relating to the lease and to the option which combined equal one, integrated contract. Contrary to the Honns' argument, Garretts did give consideration for the option, and they exercised the option consistent with the terms of the parties' agreement." CP at 143. The award also indicated that res judicata applied as "[t]he Honns could have and should have raised their consideration argument at the earlier arbitrations." CP at 145.

The Garretts moved the trial court to have the arbitration award confirmed, while the Honns sought to have the award vacated. The Honns argued that the award should be vacated because Mr. Esser was not neutral, violated the appearance of fairness doctrine, failed to consider evidence in support of the Honns' position, and misapplied Washington law. At the same time, the Honns moved to disqualify Judge Frazier under the appearance of fairness doctrine, arguing that he was biased against the Honns, impermissibly commented on the evidence during a prior hearing by suggesting res judicata would end the arbitration quickly, and helped stack the arbitration panel against them.

The Honns submitted the same affidavit that they unsuccessfully used in the attempt to get Mr. Esser to recuse himself as the nonparty arbitrator. Although the

---

contained in the lease served as consideration for the option.

7

affidavit claimed that Judge Frazier frequents restaurants with Mr. Libey and Mr. Esser, Judge Frazier said that the affiant "better check her facts here because there is a lot of inaccuracies with respect to that." RP (Feb. 13, 2015) at 38-39. Judge Frazier explained that he has had lunch with Mr. Libey before, but it is common in the legal community for judges to have meals with lawyers, especially in small communities like Whitman County. In fact, the very same day as the hearing, Judge Frazier was having lunch with a group of lawyers, and Mr. Libey came into the restaurant to talk to a retired judge. Judge Frazier denied the Honns' motion to recuse himself and confirmed the arbitration award.

The Honns appeal.

## ANALYSIS

Chapter 7.04A RCW contains Washington's version of the uniform arbitration act (UAA). As an alternative form of dispute resolution, mandatory arbitration substitutes for litigation. *See Godfrey v. Hartford Cas. Ins. Co.*, 142 Wn.2d 885, 891-92, 16 P.3d 617 (2001). "Arbitration is attractive because it is a more expeditious and final alternative to litigation." *Boyd v. Davis*, 127 Wn.2d 256, 262, 897 P.2d 1239 (1995). Arbitration is supposed to "avoid the formalities, the expense, and the delays of the court system." *Perez v. Mid-Century Ins. Co.*, 85 Wn. App. 760, 766, 934 P.2d 731 (1997). "But, arbitration can substitute for litigation only if we have confidence in the ability of the

arbitrators to make fair, unbiased decisions." *Rodriguez v. Windermere Real Estate/Wall St., Inc.*, 142 Wn. App. 833, 841, 175 P.3d 604 (2008).

"The choice of arbitrators has serious implications because 'arbitrators are, when acting under unlimited authority, . . . final judges of both the law and the facts, and . . . no review will lie for a mistake in either.'" *Rodriguez*, 142 Wn. App. at 841 (internal quotation marks omitted) (quoting *Dep't of Soc. & Health Servs. v. State Pers. Bd.*, 61 Wn. App. 778, 785, 812 P.2d 500 (1991)). Consequently, RCW 7.04A.110(2) provides that "[a]n arbitrator who has a known, direct, and material interest in the outcome of the arbitration proceeding or a known, existing, and substantial relationship with a party may not serve as a neutral arbitrator."

Freedom of contract allows parties to choose the method used to appoint the arbitrator(s). Under the tripartite arbitration process, "each party designates one arbitrator, and these two party arbitrators then agree on a third arbitrator who is presumably neutral." *Perez*, 85 Wn. App. at 766. Although "[i]t is widely acknowledged that the party arbitrators serving on a tripartite panel may not be completely neutral," the third arbitrator must be neutral. *Id.*

9

*1. Whether the trial court erred in appointing the nonparty arbitrator*

The Honns argue that the trial court erred when it appointed the nonparty arbitrator because there was insufficient evidence that the parties' method for choosing the arbitrator had failed. RCW 7.04A.110(1) provides in relevant part:

> If the parties to an agreement to arbitrate agree on a method for appointing an arbitrator, that method must be followed, unless the method fails. If . . . the agreed method fails, . . . the court, on motion of a party to the arbitration proceeding, shall appoint the arbitrator.

The Honns argue that we should apply de novo review to whether the trial court properly applied RCW 7.04A.110(1) to the facts presented. They argue that de novo review is appropriate where the record below is in written form because the reviewing court is in as good of a position as the trial court to make the proper determination. The Garretts agree, and note that de novo review applies to a trial court's decision on a motion to compel arbitration. We disagree, and take this opportunity to clarify when de novo review is, and is not, the appropriate standard when reviewing a trial court's decision based wholly on documentary evidence.

We recently held:

> Appellate courts generally review a superior court's findings of fact for substantial evidence. This is true even where the trial court's findings are based entirely on documentary evidence, provided that the trial court was called on to reconcile conflicting evidence. However,

10

> "where . . . the trial court has not seen nor heard testimony requiring it to assess the credibility or competency of witnesses, and to weigh the evidence, nor reconcile conflicting evidence, then on appeal a court of review stands in the same position as the trial court in looking at the facts of the case and should review the record de novo."

*Goodeill v. Madison Real Estate*, ___ Wn. App. ___, 362 P.3d 302, 306 (2015) (quoting *State v. Kipp*, 179 Wn.2d 718, 727, 317 P.3d 1029 (2014)).

Here, a substantial evidence standard of review is appropriate because the trial court was required to weigh evidence in determining whether the party arbitrators were unable to select the nonparty arbitrator. In their motion for the trial court to appoint Mr. Blankenship as the nonparty arbitrator, the Garretts argued that the arbitrators could not agree on the nonparty arbitrator because their arbitrator thought Mr. Blankenship should be appointed, whereas the Honns' arbitrator wanted to appoint Brian Balch. The Honns disagreed, and argued that both arbitrators were still working toward appointing a third arbitrator. The trial court was uncertain whether the arbitrators were at an impasse and, therefore, gave them two additional weeks. Impliedly, the trial court found that if the arbitrators still could not agree on a nonparty arbitrator after two additional weeks, then they truly were at an impasse.

Substantial evidence is defined as that quantum of evidence sufficient to persuade a rational fair-minded person the premise is true. *McCleary v. State*, 173 Wn.2d 477,

11

514, 269 P.3d 227 (2012) (quoting *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). Here, a rational fair-minded person could be persuaded that the arbitrators were at an impasse given their disagreement on who should be the third arbitrator *and* their inability to agree after two additional weeks. We therefore conclude that substantial evidence supports the trial court's finding that the party arbitrators could not agree on a third arbitrator, and that the agreed method for selecting the third arbitrator had failed. Consequently, because RCW 7.04A.110(1) authorized the trial court to select an arbitrator if the parties' agreed method failed, the trial court did not err in selecting an arbitrator.

*2. Whether the trial court erred in confirming the arbitration award*[2]

The Honns argue that the trial court erred in denying their motion to vacate the arbitration award because the nonparty arbitrator was biased, and also failed to make the necessary mandatory disclosures. The party challenging the arbitration award has the burden of showing grounds for vacating the award. *Hanson v. Shim*, 87 Wn. App. 538, 546-47, 943 P.2d 322 (1997). Review of an arbitrator's conduct for evident partiality,

---

[2] The Honns' assign error both to the trial court's denial of their motion for reconsideration of the appointment of Mr. Esser and the trial court's denial of their motion to vacate the arbitration award. Because the Honns' arguments relating to the former assigned error are subsumed in their arguments relating to the latter assigned error, we address the latter only.

along with compliance with the statutory arbitrator disclosures, is a question of law that courts review de novo. *See S&S Constr., Inc. v. ADC Props., LLC*, 151 Wn. App. 247, 258-60, 211 P.3d 415 (2009).

The trial court must vacate an arbitration award if it determined there is "[e]vident partiality by an arbitrator appointed as a neutral." RCW 7.04A.230(1)(b)(i). In addition, an arbitrator's failure to make a mandatory arbitrator disclosure under RCW 7.04A.120 is grounds to vacate an arbitration award.

A.     Evident partiality

Washington's UAA does not define "evident partiality." "'Evident partiality', like obscenity, is an elusive concept: one knows it when one sees it, but it is awfully difficult to define in exact terms.'" *Schreifels v. Safeco Ins. Co.*, 45 Wn. App. 442, 445, 725 P.2d 1022 (1986) (quoting *Int'l Bhd. of Elec. Workers, Local 323 v. Coral Elec. Corp.*, 104 F.R.D. 88, 89 (S.D. Fla. 1985)). Evident partiality exists where the arbitrator has an actual conflict of interest. *See S&S Constr.*, 151 Wn. App. at 258-59. However, an arbitrator's prior employment 25 years earlier with a predecessor law firm, accompanied with an appropriate disclosure, is "far too remote, and commonplace to be considered a conflict." *Id.* at 259.

13

Although the Honns argue that the judicial appearance of fairness doctrine applies to arbitrators, "[t]he goals of the arbitration process would not be served if arbitrators and judges were held to the same high standard." *Perez*, 85 Wn. App. at 766. If the arbitrator discloses any potential conflicts, the mere appearance of impropriety is not enough to establish evident partiality. "'To vacate an arbitration award where nothing more than an appearance of bias is alleged would be "automatically to disqualify the best informed and most capable potential arbitrators."'" *S&S Constr.*, 151 Wn. App. at 259 n.13 (quoting *Int'l Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548, 552 (2d Cir. 1981)).

Here, Mr. Esser had previously been a partner of the predecessor firm to Libey & Ensley, the firm that represented the Garretts in the arbitration. Mr. Esser's association with the firm ended roughly five years before he was appointed as the nonparty arbitrator. Taking the safe route, Mr. Esser disclosed his prior partnership with Mr. Libey. The record does not indicate that Mr. Esser and attorneys from Libey & Ensley recently served as co-counsel on other matters or referred cases to each other. To the contrary, Judge Frazier indicated that since the time the partnership dissolved, Mr. Esser and Mr. Libey have "had pretty good knock-down, drag-out fights and it hasn't affected their ability to advocate against one another very zealously." RP (Oct. 24, 2014) at 26. Mr. Esser's prior membership in Libey & Ensley does not present an actual conflict and, therefore,

14

does not establish evident partiality. Such a relationship, especially in a rural community, is far too commonplace to be considered an actual conflict for an ethical arbitrator. *See S&S Constr.*, 151 Wn. App. at 259.

B.    Nondisclosure of social relationship

The Honns also argue that Mr. Esser failed to disclose his continuing social relationship with Mr. Libey. In order to prevent an arbitrator from serving when a conflict is present, RCW 7.04A.120 requires certain mandatory arbitrator disclosures. Under RCW 7.04A.120(1), the arbitrator must disclose "known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding." These include a "financial or personal interest in the outcome of the arbitration proceeding," and an "existing or past relationship with any of the parties [or] their counsel or representatives." RCW 7.04A.120(1)(a), (b).

Under the case law "'[n]ot every relationship is a disclosable relationship.'" *Hanson*, 87 Wn. App. at 547 (quoting *St. Paul Ins. Cos. v. Lusis*, 6 Wn. App. 205, 209, 492 P.2d 575 (1971)). "A general duty to disclose exists when the relationship or circumstance creates a reasonable inference of the presence of bias or the absence of impartiality." *Id.* This inference exists "when an arbitrator has had a relatively recent association with a law firm representing a party and a continuing relationship with the

15

No. 33175-0-III
*Garrett Ranches v. Larry Honn Family*

firm on other matters." *Id.* (citing *Lusis*, 6 Wn. App. at 213 ("Relatively recent, although prior, professional association with *counsel* for one of the parties as a member of the same law firm, at least when coupled with a continuing and present 'co-counsel' arrangement on other matters, is a necessarily disclosable circumstance.")). However, "[j]ust as a given circumstance or relationship may be too trivial to require disclosure, so also open declaration or public knowledge of the circumstance or relationship might be such as to negate the necessity to disclose." *Lusis*, 6 Wn. App. at 214.

In *Hanson*, Division One held that the arbitrator did not need to disclose that approximately 20 years ago, the arbitrator was an associate of the law firm representing a party. *Hanson*, 87 Wn. App. at 546-48. Further, the *Hanson* court noted that prejudice was not shown from the nondisclosure because the party "d[id] not claim that the prior association had any actual impact on the award; rather it argue[d] that the nondisclosure limited its right to choose a neutral arbitrator." *Id.* at 548.

Similarly, in *Lusis*, Division Two held that an arbitrator did not need to disclose that he was on the board of the Washington State Trial Lawyers Association with a party's attorney. *Lusis*, 6 Wn. App. at 215. The appellant argued prejudice based on the "undisclosed personal and professional relationships," despite the fact that the arbitrator and the other side's attorney had never practiced together and were commonly

16

adversaries. *Id.* at 206-07. The court concluded that the relationship did not need to be disclosed, as it was reasonable for the arbitrator to assume that the parties knew of the connection based on the membership of the Washington State Trial Lawyers Association being publicly listed. *Id.* at 214-15.

Even if the affidavit claiming that Mr. Esser, Mr. Libey, and Judge Frazier frequent restaurants together was reliable, Mr. Esser was under no obligation to disclose a fact that was allegedly public knowledge. *See id.* Moreover, the Honns have not established that any alleged partiality or failure to disclose by Mr. Esser prejudiced them by impacting the arbitration award. *See S&S Constr.*, 151 Wn. App. at 259 (the proponent must "show prejudice resulting from those relationships"); *see also Hanson*, 87 Wn. App. at 548 (prejudice is established only if it is shown that the award was affected). Prior professional, and even current, social relationships between attorneys in a small community do not equate arbitrator partiality or an unwillingness of an attorney to advocate for a client. As Judge Frazier noted, Mr. Esser and Mr. Libey "had pretty good knock-down, drag-out fights" in his courtroom prior to the arbitration at issue. RP (Oct. 24, 2014) at 26.

In sum, neither Mr. Esser's disclosed prior membership in Libey & Ensley nor Mr. Esser's undisclosed social relationship with Mr. Libey establish a sufficient basis for vacating the arbitration award.

## 3. *Whether obvious error exists in the arbitration award*

The standards of reviewing arbitration awards are well-stated in *S&S Construction*:

> Washington public policy strongly favors finality of arbitration awards. Judicial review of arbitration awards is strictly limited to the grounds set forth by the Washington uniform arbitration act, chapter 7.04A RCW. Similarly, appellate review of arbitration proceedings is restricted to grounds identified in the act. An appellate court limits review of an arbitrator's award to that of the court that confirmed, vacated, modified, or corrected that award.

*S&S Constr.*, 151 Wn. App. at 254 (citations omitted).

This court reviews a trial court's decision to confirm or vacate an arbitration award de novo. *See Salewski v. Pilchuck Veterinary Hosp., Inc.*, 189 Wn. App. 898, 903-04, 359 P.3d 884 (2015).

The Honns argue that the trial court should have vacated the award because it was contrary to law, in that material facts precluded summary dismissal of the lack of consideration issue, and res judicata should not apply because they timely asserted the consideration issue once the Garretts attempted to exercise the option to purchase.

In *Broom v. Morgan Stanley DW, Inc.*, 169 Wn.2d 231, 237, 236 P.3d 182 (2010), the court held that former RCW 7.04.160(4) (1943)[3] authorized a reviewing court to vacate an award for a facial legal error. Former RCW 7.04.160(4) allowed an award to be vacated "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted to them was not made." In holding that this subsection allowed vacatur for facial legal errors, it emphasized that the legislature had not sought to amend the statute despite knowing of its historical judicial construction. *Id.* at 238. We note that the statute has since been amended, and its current provision more narrowly provides: "Upon motion of a party to the arbitration proceeding, the court shall vacate an award if . . . [a]n arbitrator exceeded the arbitrator's powers." RCW 7.04A.230(1). The current statute omits "or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made." The omission of the broader language may have been intentionally done to encourage arbitrators to provide reasoned written explanations for their awards, without concomitant concern that reviewing courts would vacate them. The parties have not briefed the continued viability of the rule that allows review of facial legal errors, so we do not further address the issue, and assume without deciding, that the rule remains viable.

---

[3] Repealed by the LAWS OF 2005, ch. 433, § 50 (eff. Jan. 1, 2006).

19

The facial legal error standard is a "very narrow ground for vacating an arbitral award," furthering the "purposes of arbitration" while preventing "obvious legal error." *Broom*, 169 Wn.2d at 239. "[C]ourts may not search the arbitral proceedings for *any* legal error; courts do not look to the merits of the case, and they do not reexamine evidence." *Id.* Therefore, "[r]arely is it possible to have an arbitration award vacated for [obvious] error of law on the face of the award." *Cummings v. Budget Tank Removal & Envtl. Servs., LLC*, 163 Wn. App. 379, 382, 260 P.3d 220 (2011). The classic example of an obvious legal error is "'where the arbitrator identifies a portion of the award as punitive damages in a jurisdiction that does not allow punitive damages.'" *Id.* at 389 (quoting *Fed. Servs. Ins. Co. v. Pers. Representative of Estate of Norberg*, 101 Wn. App. 119, 124, 4 P.3d 844 (2000)).

Here, Mr. Esser authored an eight-page arbitration decision that awarded the Garretts the right to enforce the option to purchase the Honns' property. When reviewing for obvious legal error, it is proper for us to review the written arbitration decision itself. *See id.* ("Where a final award sets forth the arbitrator's reasoning along with the actual dollar amounts awarded, any issue of law evident in the reasoning may also be considered as part of the face of the award.").

The eight-page award granted summary judgment to the Garretts based on (1) mutual promises in the lease constituting consideration for the option to purchase, and (2) res judicata as the Honns should have raised their consideration argument at the earlier arbitrations. Mr. Esser's award does not contain any obvious legal errors. His conclusion that the mutual promises in the lease constitute consideration for the option is not an obvious error of law. *See Valley Garage, Inc. v. Nyseth*, 4 Wn. App. 316, 318-20, 481 P.2d 17 (1971). Moreover, contrary to what the Honns argue on appeal, and as Mr. Esser's award reasoned, res judicata bars affirmative defenses. *See Symington v. Hudson*, 40 Wn.2d 331, 338, 243 P.2d 484 (1952) ("[W]here a party has had a full and fair opportunity to make all of the defenses at his command, and he elects not to disclose his claim . . . the doctrine of *res judicata* applies and he cannot later assert it."). Consequently, there is no obvious legal error, and the trial court did not err in confirming the award issued by the arbitration panel.

*4. Whether the trial court erred in not recusing itself*[4]

The Honns also argue that Judge Frazier should have recused himself, and that he violated the appearance of fairness doctrine. "Washington's appearance of fairness

---

[4] The Honns assign error both to the trial court's appointment of Mr. Esser, and Judge Frazier's refusal to recuse himself. Because both assigned errors depend on the same facts and the appearance of fairness doctrine, we address the latter only.

doctrine not only requires a judge to be impartial, it also requires that the judge appear to be impartial." *Tatham v. Rogers*, 170 Wn. App. 76, 80, 283 P.3d 583 (2012). In the same vein, the Code of Judicial Conduct (CJC) requires "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." CJC Rule 2.11(A) (asterisk omitted).

> The issue for a judge in considering whether the appearance of fairness doctrine may be or has been violated is not whether he or she personally and in good faith views a family relationship, for example, or a financial interest, or a fiduciary relationship, to be of little significance. It is whether, in light of the relationship, a reasonably prudent and disinterested person would conclude that all parties can or did obtain a fair, impartial, and neutral hearing.

*Tatham*, 170 Wn. App. at 104.

The burden of establishing an appearance of fairness violation is on the proponent, who must "provide sufficient evidence to overcome the presumption that the trial court performed its functions without bias or prejudice." *State v. Witherspoon*, 171 Wn. App. 271, 289, 286 P.3d 996 (2012), *aff'd*, 180 Wn.2d 875, 329 P.3d 888 (2014). "The party must produce sufficient evidence demonstrating actual or potential bias, such as personal or pecuniary interest on the part of the judge; mere speculation is not enough." *Kok v. Tacoma Sch. Dist. No. 10*, 179 Wn. App. 10, 24, 317 P.3d 481 (2013), *review denied*, 180 Wn.2d 1016, 327 P.3d 55 (2014). This court reviews a trial judge's recusal decision for

abuse of discretion—whether "the decision was manifestly unreasonable or based on untenable reasons or grounds." *Id.* at 23-24.

A.     Social relationship between opposing counsel and judge

It may be ill advised for a judge to eat lunch with an attorney who currently has a case in front of the judge, but a reasonable person would not question the judge's impartiality when there is no evidence that the case was discussed. *See Smith v. Behr Process Corp.*, 113 Wn. App. 306, 340-41, 54 P.3d 665 (2002) (no violation of appearance of fairness doctrine when judge inadvertently had dinner with two named members of a class action lawsuit and "neither the judge nor the [two class members] discussed the case"). A personal relationship between the judge and an attorney in a case, standing alone, is not enough to warrant recusal. *See Tatham*, 170 Wn. App. at 103-04; *see also Kok*, 179 Wn. App. at 25.

Here, the Honns submitted an affidavit that implies Judge Frazier, Mr. Libey, and Mr. Esser eat lunch together almost every day. However, Judge Frazier stated on the record that the affiant "better check her facts." RP (Feb. 13, 2015) at 38. Judge Frazier admitted to having lunch with Mr. Libey before, but pointed out that lawyers and judges sometimes eat meals together. It is an unavoidable fact of litigation, especially in rural communities, that a judge is a member of the legal community and may have ongoing

social relationships with attorneys coming before the court. Given the paucity of evidence that Judge Frazier had any greater of a social relationship with Mr. Libey than he had with other attorneys, and the absence of evidence that Judge Frazier and Mr. Libey discussed the pending case, we hold that Judge Frazier did not abuse his discretion in denying the Honns' motion that he recuse himself on this basis.

B.     Comments concerning case viability

The Honns also argue that Judge Frazier violated the appearance of fairness doctrine by commenting that the arbitration should be dismissed quickly if res judicata is applied. Although a violation of the appearance of fairness doctrine may be present when the trial judge impermissibly comments on the evidence or case, such comments are harmless when they are not conveyed to the finder of fact. *See Hickok-Knight v. Wal-Mart Stores, Inc.*, 170 Wn. App. 279, 318-20, 284 P.3d 749 (2012).

First, the Honns take Judge Frazier's comment out of context to make it sound like he originated the res judicata idea. Instead, the Garretts, in their motion to have Mr. Blankenship appointed the neutral arbitrator, raised the defense of res judicata as a basis for having a person knowledgeable about the case history appointed. Further, Judge Frazier's comment that res judicata would likely dispose of the arbitration was made to explain his decision to not disqualify Mr. Libey, since dismissal on that summary basis

would make Mr. Libey's testimony unnecessary. Moreover, Judge Frazier's res judicata

comment was not communicated to a trier of fact, and thus the Honns were not

prejudiced. *See id.* at 320.

The Honns have failed to produce sufficient evidence to establish a violation of the

appearance of fairness doctrine, as "mere speculation is not enough." *Kok*, 179 Wn. App.

at 24. Despite the Honns' assertions of prejudice, "a reasonably prudent and disinterested

person would conclude that all parties received a fair, impartial, and neutral hearing." *Id.*

at 23. Judge Frazier's decision not to recuse himself was not manifestly unreasonable or

based on untenable grounds. *See id.* at 23-24.

*5. Whether the Garretts should be awarded reasonable attorney fees on appeal*

On appeal, the Garretts request an award of reasonable attorney fees pursuant to

RAP 18.1 and a provision in the farm lease. Paragraph 16 of the farm lease provides:

> 16. Litigation:  In the event either or both parties shall be reasonably
> required to retain an attorney to enforce any of the provisions of this Lease,
> the prevailing party in any such enforcement proceedings shall have
> awarded to them attorney's fees and costs to the extent reasonably incurred,
> in addition to such other relief as exists under the provisions of this Lease
> or by operation of law.  Venue shall be in Whitman County, Washington.

CP at 317. Under RCW 4.84.330, the prevailing party is entitled to attorney fees for

actions on a lease, if the lease provides for attorney fees. A party may request reasonable

attorney fees on appeal under RAP 18.1. "A contractual attorney fee provision authorizes

an award of fees to the prevailing party on appeal." *Kenneth W. Brooks Trust A.v. Pac. Media, LLC*, 111 Wn. App. 393, 401, 44 P.3d 938 (2002). The Garretts are the prevailing party on appeal. We therefore award them their reasonable attorney fees, subject to their compliance with RAP 18.1.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____        _____
Siddoway, C.J.                                          Korsmo, J.

26