IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LU MANAGEMENT INVESTMENT INC., | No. 87179-0-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| YUAN'S H&H PROPERTY, LLC; L&Y REAL ESTATE DEVELOPMENT LLC; YUAN'S MANAGEMENT INVESTMENT, INC.; and GANG YUAN, | |
| Respondents. | |

HAZELRIGG, C.J. — Lu Management Investment Inc. (LMI) appeals the trial court's order that confirmed an arbitration award in favor of Yuan's Management Investment Inc. (YMI) and its manager Gang Yuan (collectively Yuan Claimants).[1] Because none of the statutory exceptions under RCW 7.04A.230 and .240 for vacating, correcting or modifying the arbitration award apply, we affirm the trial court's order that confirmed the award and grant the Yuan Claimants their attorney fees and costs on appeal.

---

[1] LMI brings this appeal against Yuan's H&H Property LLC, L&Y Real Estate Development LLC, Yuan's Management Investment Inc., and Gang Yuan. However, the underlying arbitration was between the members of those LLCs, including Yuan and YMI, not the LLCs themselves. Furthermore, the arbitration award was issued against LMI and its co-party, Jiayi Peng. She is not named as an appellant in this appeal.

In the arbitration proceedings, the arbitrator referred to Yuan and YMI collectively as the "Yuan Claimants" and Jiayi Peng and LMI as the "Lu Claimants." For the sake of clarity, we adopt the same language in this appeal.

## FACTS[2]

In February 2016, Gang Yuan,[3] citizen and resident of Chongqing, China, formed Yuan's H&H Property LLC (H&H), a Washington limited liability company (LLC). The members of H&H are two other Washington LLCs, YMI and LMI. YMI, which owns 45 percent of H&H, is owned by a trust established for the benefit of Yuan's daughter. Yuan serves as the trustee. LMI, which holds the remaining 55 percent of H&H, is owned by a trust for Jiayi Peng. Shu Lu, Jiayi's mother, serves as its trustee.[4]

Yuan also incorporated L&Y Real Estate Development LLC (L&Y), another Washington LLC. Yuan owns 45 percent of L&Y and Jiayi owns 55 percent. Both H&H and L&Y operate under LLC agreements that name Yuan as the sole manager.

Yuan's investment strategy for H&H, which was determined in 2015, was to acquire properties near the University of Washington (U District), demolish the existing structures, and construct student housing (Seattle project).[5] In March 2016, acting on behalf of H&H, Yuan contracted to buy two adjoining lots in the U District.

Shortly thereafter, Yuan returned to Chongqing and informed Jian Hua Lu, Jiayi's grandfather and the general manager of two Chinese real estate

---

[2] Additional facts will be set out in each section as necessary for analysis of the various assignments of error.

[3] Yuan and Jian Hua Lu are the primary litigants. For clarity, we refer to them by their family names throughout the opinion. Many others involved are relatives with shared family names, and we refer to them by their first names. No disrespect is intended.

[4] Jiayi and Shu are also citizens and residents of Chongqing, China.

[5] The arbitrator referred to the area near the University of Washington as the "U District" and H&H's investment as the "Seattle Project." Again, for the sake of clarity by tracking with the record on appeal, we adopt this language.

companies, Chongqing Qinglong House Industry Development Co. Ltd. (Qinglong) and Chongqing Zhongcheng Property Development Co. Ltd. (CZPD), about the Seattle project. Yuan's advertising company, Dingrun Cultural Media Ltd., later re-named Dingying Cultural Media Ltd., had previously worked with Lu in the early 2000s. Lu expressed interest in joining the venture to secure assets in the United States for Jiayi, following the imprisonment of her father, Zhimin Peng, who had founded Qinglong and CZPD.

Lu and Yuan agreed that Yuan would transfer Lu's funds to the United States and manage the daily activities of the Seattle project. Between April 2016 and November 2018, Lu transferred approximately 65.6 million RMB[6] (around $9.46 million at the time) to Yuan for the project. Yuan also contributed about $8.5 million to the LLCs from his own financial sources.

In 2016, H&H ultimately purchased three lots near the U District, but later abandoned development. Those properties remain H&H's only asset. In May 2017, H&H purchased a fourth property on Rose Point Lane on the waterfront in Kirkland (Rose Point Property) for $3.15 million. Yuan envisioned purchasing the lot adjacent to Rose Point, demolishing the houses on both lots, and building new homes to sell or rent. After purchasing the Rose Point Property, Yuan was unable to persuade the adjacent owner to sell. Shu was not interested in keeping just the Rose Point Property as an H&H investment without the adjacent land to develop. Yuan then personally bought the Rose Point Property from H&H and transferred the title to YMI in March 2018. As a result of the title transfer, Yuan directed the

---

[6] Renminbi, abbreviated to "RMB," is the official currency of the People's Republic of China.

accountant for H&H and L&Y to reduce YMI's capital account in H&H by more than the $3.15 million purchase price of the property.

In 2021, both the Yuan and Lu families independently decided to end their involvement in the Seattle project. They agreed to sell H&H's properties and dissolve both H&H and L&Y. However, disputes arose about how to distribute dissolution proceeds. In November 2021, LMI and Jiayi, holding a 55 percent stake in both LLCs, notified Yuan of their intent to remove him as manager. The parties attempted to mediate these issues, but LMI and Jiayi eventually opted to pursue arbitration.

The LLC agreements of H&H and L&Y included binding arbitration clauses, which provided that "[a]ll disputes among the parties arising out of or related to this Agreement which have not been settled by mediation shall be resolved by binding arbitration within the State of Washington." They also included identical governing law provisions, which stated,

> This Agreement shall be governed by, construed and enforced in accordance with the internal laws of the state of Washington, without giving effect to principles and provisions thereof relating to conflict or choice of laws, irrespective of the fact that any one of the parties is now or may become a resident of a different state. Venue for any action under this Agreement shall lie in King County, Washington.

On March 23, 2022, both sides served arbitration demands on each other. They jointly selected and agreed on the individual to serve as the sole arbitrator. The arbitration addressed Yuan's removal as manager, the LLCs' accounting, distribution, and the dissolution process. A 12-day hearing took place in January 2024. Fourteen witnesses testified, including Yuan, Lu family members, accountants from both the United States and China, and expert witnesses. The

arbitrator also considered testimony from six deposition transcripts and over 200 exhibits.

As manager, Yuan spent extended periods of time in Seattle from 2016 until late 2021. He assembled the local project team, managed real estate acquisitions, oversaw development efforts, and controlled H&H and L&Y's finances. Yuan made more than 10 unreimbursed trips to Seattle to work on the development effort. He also introduced evidence during arbitration that showed he paid some LLC expenditures personally and covered several purchases for Shu and Jiayi. The project's total expenditures, including real estate acquisitions, operations, and personal expenses for the Lu family, amounted to roughly $18 million.

The arbitrator estimated that 56.6 million RMB of Lu's funds were used on the project-related real estate investments. The remaining funds covered personal expenditures for Shu and Jiayi, including a $1.5 million house in Kirkland, its renovation and furnishing, a luxury vehicle, and large cash transfers to Shu's account at East-West Bank. Yuan testified that Lu considered these expenditures like the LLC expenditures, all part of the Lu family's plan to establish a foundation for them to settle in Seattle. LMI and Jiayi (collectively Lu Claimants) later contended that these transactions were not for the personal benefit of Jiayi and Shu but were instead corporate investments made by Qinglong and CZPD. Yuan also testified that Lu agreed that all the funds and expenditures would be subject to the previously agreed ownership split of 45/55.

On March 11, 2024, the arbitrator issued a 54-page award. He concluded that the Lu Claimants had no basis to remove Yuan as manager of either LLC or

challenge the accounting performed for the LLCs. The award also found that pursuant to the LLC agreements, the companies would be permitted to pay their outstanding liabilities before distributing remaining assets to members. These liabilities included unrecorded compensation owed to Yuan for serving as manager and repayment of the $3,385,731 contributions that Yuan made to or for the benefit of Shu and Jiayi.

On June 5, the Lu Claimants moved to correct or vacate the arbitration award under RCW 7.04A.230 and .240, arguing that the arbitrator exceeded his authority, committed facial legal and mathematical errors, and displayed evident partiality.[7]

First, they challenged the arbitrator's inclusion of $3,385,731 in "unrecorded liabilities" owed to Yuan. They asserted these payments were off-book personal transactions, not subject to arbitration. With regard to Shu, the Lu Claimants argued that she acted only as LMI's representative and was not bound by the LLC operating agreements or arbitration clause. As to Jiayi, although she signed the L&Y agreement with Yuan, they contended that off-book transactions between her and Yuan fell outside the scope of the arbitration clauses. According to the Lu Claimants, no arbitration agreement authorized resolution of these side dealings and incorporating them into the LLC accounting contradicted settled Washington law, violating the principle that a party cannot be compelled to arbitrate a dispute

---

[7] On appeal, the Lu Claimants failed to include a complete statement of facts and omitted this key procedural aspect of the case. RAP 10.3(a)(5) governs the content of briefing on appeal and requires that an appellant include a fair and non-argumentative summary of the facts and procedure, with citations to the record for each statement. The Lu Claimants not only omitted record citations for several statements in their brief, but also presented an argumentative account of the facts.

in the absence of an agreement to do so. *See Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 48, 470 P.3d 486 (2020) ("'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [they have] not agreed so to submit.'") (internal quotation marks omitted) (quoting *Satomi Owners Ass'n v. Satomi, LLC,* 167 Wn.2d 781, 810, 225 P.3d 213 (2009)). The Lu Claimants also argued that awarding Yuan reimbursement for these transfers before distributing assets under the agreed 55/45 ownership split created a mathematical error and conflicted with the operating agreements' "sole source" provision, which restricts members to recover only from the assets of the LLC in which they hold an interest. LMI, they noted, had no interest in L&Y, and thus should not be exposed to claims tied to that entity.

Second, they argued that the arbitrator exceeded his authority by conditioning LMI's receipt of its 55 percent interest on future notice to unidentified potential creditors, including third parties in China. They assert the award failed to define what notice must be given, how much time creditors would have to respond, or what protection would preserve funds during this indefinite period. This structure, they claim, unlawfully encumbered LMI's interest and left it vulnerable to delay or depletion.

Third, the Lu Claimants alleged that the arbitrator showed evident partiality toward the Yuan Claimants. They cited the arbitrator's informal or familiar treatment of Yuan's counsel, including once referring to her by her first name, as well as his reversal of time limits after the Yuan Claimants had exhausted their allotted hearing time. They argued that these decisions gave the Yuan claimants

additional opportunities to present the case after the Lu Claimants had structured their presentation under the original time constraints. The arbitrator later relaxed restrictions again to allow the Yuan Claimants' counsel to conduct redirect examination of a witness, which they allege further compounded the appearance of bias.

On these grounds, the Lu Claimants sought modification to exclude the challenged portions of the award related to unrecorded liabilities, equitable consolidation of H&H and L&Y, and the "embargo on LMI's share of the proceeds."

On July 17, 2024, the trial court denied the motion under RCW 7.04A.230 and .240. The court also invited the Yuan Claimants to "submit an application for attorneys' fees and other reasonable expenses incurred in opposing Petitioner's Motion."

On August 9, the Yuan Claimants moved for attorney fees and costs. The trial court granted the motion and ordered the Lu Claimants to pay all attorney fees and costs incurred in opposing the motion to correct or vacate the award.

LMI timely appealed.

ANALYSIS

LMI avers in its opening brief that the trial court erred when it confirmed the arbitration award and seeks modification of the award due to purported facial legal and mathematical errors under RCW 7.04A.240.[8] The Yuan Claimants counter

---

[8] The Yuan Claimants filed a motion on the merits to affirm in this court and argued that the appeal or any portion thereof lacks merit. A commissioner of this court considered the motion and issued a ruling advising the parties that this court currently does not use the RAP 18.14 motion on the merits procedure pursuant to a general order of this court. As a result, the motion was placed in the case file without further action.

that "what LMI characterizes as 'facial' errors are baseless disagreements with the well-reasoned findings of the arbitrator" and LMI should not be allowed to reweigh the merits of its arbitration claims. We agree with the Yuan Claimants.

I.      Standard of Review

"Arbitration is a statutorily recognized special proceeding." *McGinnity v. AutoNation, Inc.*, 149 Wn. App. 277, 281, 202 P.3d 1009 (2009). Washington's uniform arbitration act, chapter 7.04A RCW, governs both the arbitration process and the enforcement of arbitration awards. *AURC III, LLC v. Point Ruston Phase II, LLC*, 3 Wn.3d 80, 85-86, 546 P.3d 385 (2024). Under RCW 7.04A.220, a party may file a motion with the superior court for an order confirming the award. RCW 7.04A.220 provides that the court shall issue a confirming order unless the award is modified, corrected, or vacated. "The confirming court does not have collateral authority to go behind the face of the award or to determine whether additional award amounts are appropriate." *Price v. Farmers Ins. Co. of Wash.*, 133 Wn.2d 490, 496-97, 946 P.2d 388 (1997). "To do otherwise would call into question the finality of arbitration decisions and undermine alternative dispute resolution." *State v. Am. Tobacco Co.*, 28 Wn. App. 2d 452, 478, 537 P.3d 303 (2023) (quoting *Int'l Union of Operating Eng'rs v. Port of Seattle*, 176 Wn.2d 712, 720, 295 P.3d 736 (2013)). Once the superior court enters an order confirming the arbitration award, RCW 7.04A.250(1) provides that the court shall enter a judgment on the award.

RCW 7.04A.280 states that parties may appeal orders confirming, denying, modifying, correcting, vacating an arbitration award, or a final judgment on the award. RCW 7.04A.280(1)(c)-(f). The appellate court's review is limited to the

same standards applicable in the court that confirmed, vacated, modified, or corrected the award. *Salewski v. Pilchuck Veterinary Hosp., Inc.*, 189 Wn. App. 898, 903, 359 P.3d 884 (2015). We review only whether one of the statutory grounds to vacate an award exists. *Id*. at 903-04.

RCW 7.04A.230 and .240 set out the scope of a trial court's ability to vacate and modify arbitration awards, respectively, and, therefore, the scope of appellate review of the trial court's orders. Vacation is required where, among other possibilities, there was evident partiality on the part of the arbitrator, misconduct by the arbitrator that prejudiced the rights of a party, or the "arbitrator exceeded the arbitrator's powers." RCW 7.04A.230(1)(b)(i), (iii), (1)(d). As relevant here, modification is required where "[t]here was an evident mathematical miscalculation or an evident mistake in the description of a person, thing, or property referred to in the award." RCW 7.04A.240(1)(a).

Relying on federal authority, a panel of this division recently held in an unpublished opinion that a trial court's decision to confirm an arbitration award is reviewed de novo. *Feldman v. Williams*, No. 85476-3-I, slip op. at 6 (Wash. Ct. App. July 29, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/854763.pdf.[9] We expressly adopt the sound reasoning articulated in *Feldman* on that issue. Nonetheless, judicial review of an arbitration award is still limited to the face of the award, and the award will not be vacated or modified in the absence of an error of law on the face of the award. *Davidson v. Hensen*, 135 Wn.2d 112, 118, 954 P.2d

_____

[9] While GR 14.1(c) directs that "Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions," the similarity of the issue at hand and the fact that this is recent authority out of this same division, makes the case relevant to our consideration of this issue.

1327 (1998). An error of law on the face of the award demonstrates that an arbitrator has exceeded their powers under RCW 7.04A.230(1)(d). *Am. Tobacco*, 28 Wn. App. 2d at 478. The error must be recognizable from the language of the award, as, for instance, where the arbitrator identifies a portion of the award as punitive damages in a jurisdiction that does not allow them. *See Kennewick Educ. Ass'n v. Kennewick Sch. Dist. No. 17,* 35 Wn. App. 280, 282, 666 P.2d 928 (1983); *Lindon Commodities, Inc. v. Bambino Bean Co., Inc.*, 57 Wn. App. 813, 816, 790 P.2d 228 (1990) (An error may be shown either through "adoption of an erroneous rule or mistake in applying the law."). Accordingly, superior courts considering a motion to modify, correct, or vacate an award and appellate courts on appeal generally do not address the merits of arbitration awards. *Davidson*, 135 Wn.2d at 119. When reviewing an arbitration award, superior courts and appellate courts do not conduct a trial de novo, do not consider the merits of the case, and do not reexamine the evidence. *Broom v. Morgan Stanley DW, Inc.*, 169 Wn.2d 231, 239, 236 P.3d 182 (2010).

The party challenging the award bears the burden of showing such grounds exist. *Cummings v. Budget Tank Removal & Envtl. Servs., LLC*, 163 Wn. App. 379, 388, 260 P.3d 220 (2011). Public policy in Washington strongly favors the finality of arbitration awards. *S&S Constr., Inc. v. ADC Props., LLC*, 151 Wn. App. 247, 254, 211 P.3d 415 (2009). Arbitration exists to resolve disputes efficiently and with finality, not to serve as a prelude to litigation. *McGinnity*, 149 Wn. App. at 282.

II.    Scope of Review

LMI assigns error to the trial court's order that denied its motion to correct or vacate the arbitration award and confirmed the award and its entry of a final judgment confirming the arbitration award and awarding attorney fees and costs.

RCW 7.04A.250(1) states that the superior court "*shall* enter a judgment in conformity with the order" confirming the arbitration award.  (Emphasis added.) This means that if the superior court confirms the arbitration award, it must enter a judgment consistent with that award.  *AURC III*, 3 Wn.3d at 91.  "If the court does not modify, vacate, or correct the award, the court exercises a mere ministerial duty to reduce the award to judgment."  *Price*, 133 Wn.2d at 497.

Here, the trial court's final judgment rests on the propriety of its order denying LMI's motion to correct or vacate the arbitration award.  Because LMI does not address its challenge to the final judgment in briefing, we review only the trial court's denial of the motion.

III.    Grounds for Vacatur and Modification

A.    Unrecorded Liabilities

LMI challenges the arbitrator's decision to treat $3,385,731 in expenditures by Yuan, for the benefit of Shu and Jiayi, as unrecorded liabilities of H&H or L&Y to be paid prior to any distribution.  LMI argues that these were personal transactions outside the LLCs' accounting that involved individuals not party to H&H's or L&Y's operating agreement and, therefore, fall outside the scope of the arbitration.  It cites *Burnett* to argue that "arbitration 'is a matter of contract and a

party cannot be required to submit to arbitration any dispute which [they have] not agreed so to submit.'" 196 Wn.2d at 48 (internal quotation marks omitted).

While the quote from *Burnett* is accurate, it does not apply to these facts. The arbitration clause in both agreements here encompassed "[a]ll disputes among the parties arising out of or related to [the LLC] Agreement[s]." The arbitrator determined that the disputed expenditures were related to the LLCs' operations, incurred during the formation and execution of the joint venture. The arbitrator determined, based on testimony and accounting records, that although the payments were made from Yuan's personal account, "these expenses were made for the purpose of the joint Seattle venture, and it was a matter of convenience that the funds flowed from Yuan's personal account without passing through either LLC."

We hold that this conclusion was within the arbitrator's interpretive authority. The arbitrator did not purport to resolve claims between non-parties or impose liability on Shu and Jiayi. Rather, he resolved an internal accounting dispute among members of the LLCs because it was related to the operating agreements. The trial court correctly concluded that there was no facial error and the arbitrator did not exceed his powers. *See Price*, 133 Wn.2d at 496-97 ("The confirming court does not have collateral authority to go behind the face of the award or to determine whether additional award amounts are appropriate.").

B.     Mathematical Errors

LMI next contends that the arbitrator committed a mathematical miscalculation by awarding Yuan reimbursement for the "unrecorded liabilities"

before applying the 55/45 ownership split to the LLCs' remaining assets. LMI argues that if all $18 million in contributions, including the unrecorded liabilities, were subject to the agreed distribution of all assets 55/45 regardless of contributions, no part of the $3,385,731 should have been repaid to Yuan separately.

The award, however, distinguishes between contributions and liabilities and confirms that H&H and L&Y "pay their outstanding liabilities prior to distributing the remaining assets in kind among the Members." The arbitrator then enumerated specific debts, including $3,385,731. We hold that this allocation is not inconsistent with the overall 55/45 split and reflects a standard winding up process where liabilities are satisfied before equity is distributed. *See Lindon Commodities*, 57 Wn. App. at 816 ("The evidence before the arbitrator will not be considered."). The trial court properly confirmed the award because the award is substantially sufficient on its face to settle the dispute on its merits, *Westmark Properties, Inc. v. McGuire*, 53 Wn. App. 400, 404, 766 P.2d 1146 (1989), and LMI's claim does not identify an "evident mathematical miscalculation" under RCW 7.04A.240(1)(a).

C.    Arbitrator's Scope of Authority

1.    Sole Source Provision

Paragraph 12.4 of each operating agreement provides,

The Member shall look solely to the Company's assets for the payment of any debts or liabilities owed by the Company to the Member and for the return of capital contributions and liquidation amounts. If the Company property remaining after the payment or discharge of all of its debts and liabilities to persons other than the Member is insufficient to return the Member's capital contributions, the Member shall have no recourse therefore against the Company.

- 14 -

LMI contends that the award improperly exposed LMI's interest in H&H to Yuan's claims against L&Y, an entirely separate entity in which LMI holds no interest.  It argues that under this express provision of each operating agreement, Yuan is restricted to seeking recovery solely from the assets of L&Y in connection with his claimed personal loans to that entity.

Here, the award specifically noted that H&H and L&Y "should be equitably consolidated pursuant to the authority of *In re Auto-Train Corp., Inc.*, 810 F.2d 270, 276 (D.C. Cir. 1987).  Upon liquidation of assets of both companies, the combined cash returned from liquidation may be used to pay liabilities of each company."  We hold that the arbitrator's conclusion on this issue was not a facial legal error because the companies operated in such an intertwined manner that equity required treating them as one.

### 2. Unrecorded Liabilities and Embargo of LMI's Proceeds

LMI further argues that the arbitrator expanded his own jurisdiction beyond what was granted by the LLCs' agreements.  It objects to the condition on the distribution of LMI's 55 percent interest, namely that the notice first be given to unidentified potential creditors in China.  LMI asserts that the award improperly injected disputes involving non-parties and foreign transactions that fall outside the scope of the LLC agreements.

Here, in September 2022, the Lu Claimants sought to amend their arbitration demand to introduce a new claim that, in addition to the 65.6 million RMB they had contributed to the Seattle project, they should be credited with an

additional $10 million. They claimed this $10 million represented a portion of payments made by Qinglong and CZPD to Yuan's companies under real estate sales agency contracts between 2017 and 2021. They alleged that the parties had agreed to invest these funds in the Seattle project, in the Lu Claimants' name, and on behalf of Qinglong and CZPD. The Yuan Claimants denied the existence of such an agreement. They instead argued that the entire 65.6 million RMB, as well as the additional $10 million, were funds wrongfully diverted from Qinglong and CZPD. They pointed to deposition testimony and other admissions by the Lu Claimants suggesting the contributions came from those companies and were invested in the LLCs without proper authority.

The arbitrator allowed both parties' claims to proceed to arbitration, but limited the scope. In orders issued on November 11 and December 1, 2022, the arbitrator held that such claims were arbitrable only to the extent they involved funds that passed through the LLCs or affected the final accounting. He denied broad discovery into the parties' prior business dealings in China, focusing instead on whether the funds at issue impacted the LLCs' finances. Two issues emerged: whether the Lu Claimants had authority to transfer the funds from Qinglong and CZPD for investment in the LLCs, and whether the parties had a valid agreement to invest the $10 million on behalf of the LLCs. The arbitrator found the evidence failed to establish either.

The award demonstrates on its face that the arbitrator was concerned about potential creditor claims, but he stopped short of resolving such claims or reallocating the assets. He expressly stated, "It is beyond the authority of this

Arbitrator to declare whether these unauthorized transfers constitute a crime under Chinese law." Far from issuing judgment on the legality of foreign transactions, the arbitrator confined his ruling to the impact of purported illegality on the LLCs' accounting. Furthermore, the Lu Claimants cannot present these issues and later argue that the arbitrator exceeded his authority by addressing them in limited form. Because the arbitrator constrained his findings to the LLCs' financial accounting, we conclude that his decision did not exceed the powers conferred on him by the binding arbitration clauses in the parties' LLC agreements.

### D. Evident Partiality

LMI asserts that the arbitrator displayed evident partiality with regard to the inclusion of the issue of illegality in discovery and in the manner by which he conducted the hearing. It argues that the arbitrator's procedural rulings, which included granting the Yuan Claimants additional hearing time, permitting redirect examination of a witness after prior denial, and referring to Yuan's counsel by her first name, demonstrate evident partiality. LMI's only authority to support this is *Schreifels v. Safeco Insurance Co.*, which notes that "'[e]vident partiality,' like obscenity, is an elusive concept: one knows it when one sees it, but it is awfully difficult to define in exact terms." 45 Wn. App. 442, 445, 725 P.2d 1022 (1986).

The face of the award does not support the conclusion that there was "[e]vident partiality by an arbitrator appointed as a neutral." RCW 7.04A.230(1)(b)(i). The hearing lasted 12 days, involved 14 witnesses and extensive documentation, and included briefing from both sides. The arbitrator explained that he included findings of fact on the Qinglong and CZPD issues only

after the Lu Claimants requested to add a new claim: "that, in addition to the 65.6 million RMB they contributed to the Seattle project, they should be credited with an extra $10 million." As for the reference to counsel by her first name, the mere informality does not constitute evident partiality, particularly when it occurs as a single isolated incident. Similarly, procedural decisions, such as granting limited redirect or extending hearing time for one side, particularly in a lengthy and complex arbitration, did not rise to the level of "evident partiality." The trial court did not err because none of these unrepeated actions justified vacating the award under RCW 7.04A.230(1)(b)(i).

IV.      Attorney Fees and Costs

The Yuan Claimants seek attorney fees and costs incurred in connection with this appeal pursuant to RAP 18.9(a) and RCW 7.04A.250, as two independent bases.

RAP 18.9(a) authorizes appellate courts to order compensatory damages or sanctions if a party files a frivolous appeal. *Advocs. for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd*., 170 Wn.2d 577, 580, 245 P.3d 764 (2010). An appeal is frivolous if, considering the entire record, the court is convinced there are no debatable issues on which reasonable minds may differ, and it is totally devoid of merit. *Id*.

RAP 18.1(a) allows for an award of attorney fees "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." Attorney fees may be awarded when authorized by a contract provision, statute, or recognized ground in equity. *King County v. Vinci Constr. Grands*

*Projets/Parsons RCI/Frontier-Kemper, JV*, 188 Wn.2d 618, 625, 398 P.3d 1093 (2017).  Relevant here, RCW 7.04A.250(3) permits an award of attorney fees and other reasonable expenses to the prevailing party in actions to confirm, vacate, modify, or correct a judgment.  Here, the Yuan Claimants satisfied RAP 18.1(b)'s procedural requirements and prevailed on appeal.  We therefore award them attorney fees and costs, subject to further compliance with the procedural requirements of RAP 18.1(d).

Because we grant the Yuan Claimants attorney fees and costs on appeal under RCW 7.04A.250, we need not reach a conclusion on frivolousness.

Affirmed.

_____

WE CONCUR:

_____  _____
Chung, J.                J., J